**STATE of Missouri, Respondent,**

v.

**Albert Smith JACKSON, Appellant.**

No. 54265.

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1969.

Rehearing Denied Nov. 10, 1969.

John C. Danforth, Atty. Gen., Warren K. Morgens, Asst. Atty. Gen., Jefferson City, for respondent.

Curtis C. Crawford, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of assault with intent to kill with malice

aforethought, under the provisions of § 559.180.[1] He was also charged with five prior felony convictions. See § 556.280. The jury found him guilty of the offense charged and the court fixed his punishment at imprisonment for a term of 23 years. Defendant has appealed from the ensuing judgment. We affirm.

Shortly before February 2, 1968, a St. Louis police officer received information indicating that defendant was selling narcotics. It was decided that the Department would have a plain clothes officer attempt to make a "buy" and, if successful, to arrest defendant. Shortly before 11:30 p. m. on February 2, 1968, six members of the Special Operative Deployment Division of the Department drove to a parking lot about three-fourths of a block from defendant's apartment. All of these officers were wearing plain clothes. It was decided that Officer Gordon would attempt to make the "buy." He was given some money, the serial numbers of which had been recorded, and went to the Jackson apartment where defendant answered the door. When Gordon asked him if he had anything for sale he said, "I've got a five-dollar pack." Defendant went upstairs and upon returning gave an aluminum foil package containing a white powder substance to Gordon and received the $5.00. Gordon returned to the car, having been gone only about five minutes, and all of the officers proceeded to defendant's apartment to make the arrest. Officers Flynn, Lodl, and Gordon went to the front door. The other three officers were stationed at the rear and side of the building. Officer Lodl knocked on the screen door and defendant appeared at the top of the stairs and asked what he wanted. Lodl, who was acquainted with defendant, said, "Albert, come on. You are under arrest, open up," and defendant said "I am not going to open up, get away from the front door," and went back into his apartment. Officer Flynn then opened the screen door and started to open the entrance door, the top half of which was glass, when defendant reappeared with a rifle and started shooting. The first shot missed Flynn, and Flynn returned the fire, but defendant's second shot struck Flynn in the forehead and he fell to the floor of the porch. After that a number of shots were exchanged. Officer Lodl also received a laceration on his right hand which apparently was caused by a bullet. Lodl and Flynn were taken to the hospital. Many other police officers arrived in response to a radio call for help and after tear gas projectiles had been fired into the building the defendant, his wife, and three other men were arrested in the basement of the building.

It developed that Officer Flynn was not seriously injured. The bullet which struck his forehead did not penetrate the skull but grazed the skull and was lodged between the skin and bone. It was removed at the hospital and he was discharged 13 hours later.

In searching the apartment after the arrest of its occupants the officers found the rifle, which was identified as the one defendant used, and one other rifle and a .22 caliber pistol. Quite a number of live shells were found on the living room floor.

Defendant did not testify. The only testimony he offered was that of his wife. She stated that when a man came to the door on the occasion in question defendant called down to him from the upstairs window and asked what he wanted, and the person replied that he wanted a pack. Defendant said he didn't have anything like that; that about ten minutes later they heard breaking glass and someone kicking in the door and then a shot, and she and her husband immediately ran to the basement and were joined there a short time later by the three visitors in the apartment. In other words, she denied that defendant sold any narcotics or fired any shots.

1. All statutory references are to RSMo 1959, V.A.M.S.

The first point briefed is that the court erred in admitting evidence that defendant had committed another crime, i. e., the sale of a narcotic drug to Officer Gordon. It is, of course, a well settled general rule that ordinarily proof of the commission of separate and distinct crimes is not admissible. However, the exceptions to that rule are stated in State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307, as follows: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' * * 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime.' "

Actually, there was no proof of the crime of selling a narcotic as there was no evidence that the white powder sold was a narcotic. However, since it did appear to be such, and since the jury would likely have assumed that it was a narcotic, we will treat the contention as though the proof had been made.

■ We rule that the evidence was properly admitted. It certainly had a logical relevance to the occurrences five minutes later at defendant's apartment. The evidence indicated that defendant, from the top of the stairway, could see all three of the men on the front porch which included Gordon who had made the recent "buy." He therefore had reason to know why the officers had come to arrest him. It would appear that defendant fired the shots in an effort to avoid arrest. Proof of the recent crime would show that he knew he would likely be charged with a felony and tended to prove his motive and intent in firing the shots.

■ The next contention is that defendant should be granted a new trial because of prejudice resulting from the display of weapons at the trial that were not admitted in evidence. As we have stated, two rifles and a pistol were identified as having been found in defendant's apartment. Those were all offered in evidence. The rifle identified as the one fired by defendant was admitted but the other two weapons were excluded. We do not think defendant has preserved this contention for review. No objection was made during the trial to the fact that these weapons were in the courtroom and were identified by the witnesses. Actually, defendant's attorney handled these weapons and used them in cross-examining two of the witnesses. When they were excluded by the court defendant did not make any request that the jury be instructed to disregard all references to them. The matter was raised for the first time in the motion for new trial. It is our view that some sort of objection should have been made during the trial and since there was none the matter is not properly before us for review. State v. Marshall, 354 Mo. 312, 189 S.W.2d 301 [6]; State v. Anderson, Mo., 375 S.W.2d 116 [8]; State v. Smith, Mo., 310 S.W.2d 845 [3]. Defendant has cited the case of State v. Holbert, Mo., 416 S.W.2d 129, in which guns were improperly admitted in evidence. Also, in that case, there were repeated objections to the display of the guns in the courtroom. The factual situation in Holbert is so different from that in the case at bar that it is not applicable.

After the jury had deliberated for more than three hours it was brought into the courtroom and, in response to a question by the court, the foreman stated that the numerical vote was ten to two. The court

then gave the jury additional Instruction No. 7 which reads as follows:

"It is desirable that there be a verdict in every case. It costs considerable money and time and effort to try any lawsuit and the parties are entitled to have their rights determined once and for all in every case, and the 12 jurors chosen to try this case should be as well qualified to do so as any other 12 that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue, yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

Thereafter (the defendant's brief says 30 minutes) the jury returned the verdict.

█ Defendant's final point is that the court, in giving Instruction No. 7, improperly influenced and coerced the jury into agreeing to a verdict. This court has held similar instructions given under like circumstances not to be improper or coercive. See State v. Roberts, Mo., 272 S.W.2d 190, Anderson v. Bell, Mo., 303 S.W.2d 93, and State v. Nelson, Mo., 428 S.W.2d 518. From what was said and done in this case, we find nothing to indicate that the giving of Instruction No. 7 had a coercive effect upon the jury. We accordingly rule this point against defendant.

The judgment is affirmed.

SEILER, P. J., STORCKMAN, J., and HENLEY, Alternate Judge, concur.