**Freddie Lee GRANT, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 54420.**

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1969.

Linus E. Young, Portageville, for movant-appellant.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal by Freddie Lee Grant from an adverse judgment on a motion under Criminal Rule 27.26, V.A.M.R. to vacate his 99-year sentence for rape, filed in the light of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, on the theory that appellant was denied due process of law in that the confrontation in this case was unnecessarily suggestive and conducive to irreparable mistaken identification. Appellant also cites United States v. Clark, D.D.C., 294 F.Supp. 44, and United States ex rel. Geralds v. Deegan, S.D.N.Y., 292 F.Supp. 968. This is the third time Grant's case has been before this court. State v. Grant, Mo.Sup., 380 S.W.2d 799; State v. Grant, Mo.Sup., 394 S.W.2d 285.

At 11:15 or 11:30 a. m. on November 3, 1960 the victim was raped by a negro whom she had not previously known; a man who came to the door to make an inquiry about a tractor and asked for a drink of water. After drinking the water the man forcibly entered the house, forcibly brought her back into the house when she fled, forcibly removed the victim's clothes and performed the act over the resistance of the victim. After he left the victim ran to a neighboring farmhouse (the Williams residence) a quarter of a mile away. The highway patrol and county sheriff were called. The victim gave the officers a description of the assailant including that of a jacket he

was wearing, which she described as blue in color, with a three-quarter-length sleeve, with little white stripes going up and down the sleeve. While taking the description the officers received a telephone call reporting that a man had been seen on a farm a mile and a half or two miles from the Williams residence. The officers went to the place, arrested appellant and brought him back to the Williams residence, handcuffed.

When she first saw appellant at the Williams residence the victim commented that the man did not have his jacket on. Nevertheless she positively identified appellant as her assailant. This was approximately 30 minutes to an hour after the rape. Appellant was the only colored person in the house. After the identification appellant, asked about the jacket, said he left it in a field. He accompanied the officers to the place, a mile and a half from the Williams home and 500 yards from the place where appellant was arrested. There they found the jacket described by the victim. Later that afternoon, after the victim had been taken to a hospital for examination and treatment, she was taken to the police station, where she observed a lineup of 3 negro men, one of whom was appellant. Appellant was not wearing the jacket in the lineup. There is no evidence as to the similarities or dissimilarities between appellant and the other two persons in the lineup except that they were negro men. At that time she positively identified appellant as her assailant. At the trial the victim for a third time identified appellant as the man who raped her, and again identified the jacket.

Appellant argues that the identification made of him at the lineup and later in court was the direct result of the identification made by the victim immediately after the arrest and that the first confrontation, at the Williams residence, was made under conditions "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." The gist of the argument is that the showing of appellant to the victim singly, in a one-to-one confrontation, and not as a part of a lineup, tainted the confrontation, and that the victim's identification of appellant at the lineup and in court was the fruit of the tainted confrontation at the Williams residence.

In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, commenting upon the criticism of the practice of showing suspects singly to persons for the purpose of identification, the court made it clear that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *." 388 U.S., 1. c. 302, 87 S.Ct. at p. 1972. In that case it was held that the showing of Stovall to the identifying witness in a face-to-face confrontation without a lineup was the only feasible procedure; that the identifying witness was in a hospital and no one knew how long she would live; that the need for action was immediate, and the identifying witness could not visit the jail or police station for the usual lineup. The court affirmed the action of the court of appeals affirming the conviction.

While there was no emergency situation there was an urgency in the circumstances of Grant's case which justified the procedure adopted by the officers. A heinous crime had been committed. The officers had the responsibility of ascertaining the identity of the criminal. Their attention having been directed to appellant, and he having been taken into custody, it was important in those early moments of the investigation that he either be detained as the suspect or released and the investigation continued without interruption in the effort to identify and find the attacker. Hence there was a practical necessity of taking the arrested suspect immediately before the victim, who was about to be taken to the hospital (and therefore apparently unable at that time to accompany the officers to the police station for the conduct of a lineup). The victim was "the only person in the world who could possibly ex-

onerate [Grant]. Her words, and only her words, 'He is not the man' could have resulted in freedom for [Grant]." (Paraphrasing 388 U.S., l.c. 302, 87 S.Ct., at p. 1972.) An on-the-spot, one-to-one confrontation was the only practical procedure under the circumstances. In the totality of the circumstances there was no unfairness or unnecessary risking of irreparable mistaken identification. There were, to the contrary, many factors circumstantially guaranteeing the accuracy and reliability of the one-to-one confrontation. The victim had seen appellant at her door, in broad daylight. She had conversed with him and given him a drink of water, which she watched him drink. He was in her immediate view all of the time she was trying to hold the screen door shut; thereafter as he entered the house; as he brought her back into the house after escaping; and as he forcibly undressed her and undressed himself. He was in her close and intimate view while he was performing the act of sexual intercourse. As the Attorney General's brief says, "Virtually no other crime offers the opportunity for observation of the perpetrator as the crime of rape." The victim noticed his jacket and carefully described it. When appellant was brought before her a half hour or hour after the rape the victim identified him positively and unequivocally. When asked at the trial about the certainty of her identification she said, "Do you think you could go through a thing like that and not * * remember what someone looked like * * not remember the face? I don't believe nobody could." The jacket, retrieved with the assistance of appellant, matched the jacket the victim had described. Before the lineup the officers made no suggestions to her as to which of the three was Grant. Nothing was said to her except that she should take her time and be sure that the one she identified was the right one. Without hesitation she identified appellant. All of the circumstances, considered together, fail to demonstrate an unfair identifica-

tion or any reasonable possibility of a mistaken identification arising out of improper suggestion. State v. Keeney, Mo. Sup., 425 S.W.2d 85; State v. Blevins, Mo. Sup., 421 S.W.2d 263; State v. Matha (October 13, 1969), Mo., 446 S.W.2d 829. The court properly overruled the motion to vacate the sentence and judgment.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, J., concurs.

SEILER, P. J., concurs in result in separate opinion filed.

STORCKMAN, J., absent.

SEILER, Presiding Judge (concurring in result).

It appears to me that what is said in the main opinion about the justification for the one-to-one confrontation at the Williams residence is not necessary, because it is quite clear the victim's in-court identification was not based on what occurred at the Williams residence, but was based on her observations made immediately before and at the time of the offense, which the opinion, it seems to me, in fact, relies on and sets forth in some detail. I, therefore, concur in the result reached, but not in the portion of the opinion which endorses the actions taken at the Williams residence. Such a confrontation was not necessary and in most cases will simply add a needless risk to successful law enforcement.