STATE of Missouri, Respondent,

v.

Eddie LeVoi CORLEW, Appellant.

No. 55157.

Supreme Court of Missouri, Division No. 2.

March 8, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Alfred I. Harris, St. Louis, Samuel Raban, St. Louis, for appellant.

MORGAN, Judge.

The indictment returned against defendant charged him with two prior offenses and the crime of Robbery First Degree by means of a Dangerous and Deadly Weapon. Sections 560.120 and 560.135, V.A.M.S. After the jury returned a verdict of guilty, the court assessed a penalty of twelve years confinement. Section 556.280, V.A.M.S.

On appeal, defendant contends: (1) the indictment was presented without the grand jury hearing any legally competent evidence, (2) the trial court erred in allowing in-court identification without having found "beyond a reasonable doubt" that such identification was not tainted by prior illegal procedures, (3) the trial court erred in permitting evidence of additional offenses not connected with the offense for which defendant was being tried, and (4) the trial court erred by exerting pressure on the jury by (a) inquiring as to the prospect of reaching a verdict, and (b) the giving of a "hammer" instruction.

Factually, it appears that certain employees of a large automobile plant in the City of St. Louis, during all times of interest here, had participated in or perhaps promoted a "floating" poker game. Such activities were scheduled at different locations on or near payday for those employees interested. On the night of January 11, 1968, and on at least one prior occasion, the game was scheduled at the residence of employee Sanders. Two

others, Belue and Buck, paid Sanders rent, furnished free beer and with some regularity "cut the pot." Approximately twenty-five men were in attendance with games in progress in a bedroom and the kitchen. Near two a. m. on the 12th, Sanders answered a knock on the front door, recognized one of the two on the porch, and opened the door. After a moment, two men entered with ski masks on their face. After announcing there was to be a holdup, one intruder, now identified as defendant Corlew, with the aid of a shotgun, had all present place their hands on their heads and stand in the kitchen. The other, identified as (Wayne) Twist, brandished a semi-automatic pistol. With obvious precision, each victim was taken, one at a time, from the kitchen; and after compliance with instructions to put all money, watches, rings and billfolds in a suitcase, each was ordered to the floor of a bedroom where Twist tied his hands and feet together. When there was no more rope, this was done with strips torn from sheets and bedding. After the intruders left, Belue and Buck drove to a police station and reported the robbery and that defendant was one of the offenders. Belue directed the police to defendant's home where they were met by Mrs. Corlew around four a. m. While the police were there, defendant called by phone and he was advised the police would wait. Defendant arrived about 6:40 a. m. on the 12th. Soon thereafter he was taken to the police station where he was identified by Sanders, Belue, Buck and one Wilkerson as the offender. There was no lineup procedure. For simplification of the first point presented, it should be mentioned at this time that all four had known defendant previously, but Sanders had not known his name. At the station, one of the others advised Sanders that defendant was named Eddie or "Bud" Corlew.

Sanders and one police officer appeared before the grand jury. The trial court sustained defendant's motion to see a copy of their testimony and it is a part of the record. State ex rel. Clagett v. James,

Mo., 327 S.W.2d 278; State v. Bibbs, Mo., 461 S.W.2d 755 (handed down December 14, 1970.)

■ Upon motion of defendant, the trial court held an extended and exhaustive pretrial hearing with all trial witnesses testifying as to whether or not the police station identification had tainted the identification testimony anticipated at trial. Based on testimony which was identical to that given at trial, and a portion of which we of necessity must detail later, the court found "that any in-court identification would not be tainted by what happened at the police station." However, the order entered provided there would be no reference to such proceedings. In view of the fact the restrictive portion of the order was not violated, we need not discuss the propriety thereof. Nevertheless, since each witness knew defendant prior to the offense, his in-court identification had an independent basis and was admissible notwithstanding lack of counsel at the station. State v. Mentor, Mo., 433 S.W.2d 816, 818; State v. Franklin, Mo., 448 S.W.2d 583, 584.

■■ In point one defendant argues the indictment should have been quashed. This for the reason, Sanders, at the station, "learned from Mr. Buck and others that the defendant Eddie Corlew was to be identified as the robber," and, "If the evidence was to be excluded from the petit jury it must also be excluded from the grand jury." For several reasons, this contention is without merit. First, Sanders did not mention the police station events before the grand jury, but did, in reference to defendant, say, " * * * he played cards there the Thursday before and I let him in." Second, since Sanders knew defendant from his appearance, his identification was of the individual person; and even though he might have learned defendant's real name under circumstances we will assume were improper, such fact would be of no legal significance. Third, and of more importance, is the long estab-

lished principle that actions of a grand jury are not made void by some later exclusionary rule applied at trial to some portion of the evidence. As was said in State v. Randolph, 139 Mo.App. 314, 123 S.W. 61, 62: "While an indictment cannot be returned without the hearing of some testimony, the grand jury are themselves the judge of how much testimony is required, and also as to whether the testimony which they hear is competent." Again, as stated by this court in State v. Faulkner, 185 Mo. 673, 84 S.W. 967, 974: "In this inquiry it must be remembered that the question involved is not as to the sufficiency of the evidence authorizing the finding of the indictment, or that there may have been incompetent testimony heard—of that the grand jury were the judges—but the question is whether they had before them any evidence at all."

In his second point, defendant claims error because of the failure of the trial court in its order, finding in-court identification would not be tainted, to include the words "beyond a reasonable doubt." No authority is cited which calls for the specific entry. However, the wording of the order made makes it abundantly clear the trial court so concluded. In any event, we are to ascertain from the record if the order can be sustained, State v. Williams, Mo., 448 S.W.2d 865, and with the record before us it is not difficult to do so. "It is not necessary to remand this case for hearing required by United States v. Wade [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149], because such hearing was accorded, * * * and the evidence has been preserved." State v. DeLuca, Mo., 448 S.W.2d 869, 871. As noted, Sanders had observed defendant during the game held the previous week. Although employed elsewhere, defendant had been invited. Wilkerson had known both Corlew and Twist for at least a year; had drunk with defendant at taverns "numerous times" for "three or four hours"; had recognized defendant immediately and told Belue, who told him to "Shut up, you'll

get us killed." Buck had known both intruders and had been in taverns and card games with both, and although he recognized defendant immediately he avoided indicating it. Belue had known defendant two or three years, and said: "had run around with him quite often * * * we went out and drank together, went to card games * * * I bought his car off of him, and I knew him quite well * * * I knew his wife Daisy and had been with her." He, too, recognized defendant as soon as he entered. No further facts need be recited to show that the trial court had an abundance of evidence which dictated its finding. If it were possible to conceive of any reason for doubt, they were placed at rest at trial when defendant took the stand to testify and confirmed his past associations with the witnesses mentioned. Tested under the "totality of the surrounding circumstances" there was no violation of due process. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Next, argument is made that the trial court should not have allowed evidence of other offenses committed by defendant. Such offenses (not convictions) were those in which defendant had threatened and assaulted some of the witnesses prior to trial. Belue testified that about a week after the robbery, he saw Corlew at their usual bar and told him, "* * * if he would give all our wallets and stuff back, that we would drop the charges * * *." Defendant explained that he couldn't get the watches and rings back because they were gone, but said, "I can get your stuff and Buck's stuff back." This counteroffer was denied, but later at the same bar Belue found a sack containing most of the wallets, personal papers, car keys and plant identification badges in a closet. Evidence was offered that some time later, defendant threatened and assaulted certain witnesses prior to the trial. Wilkerson testified that while with his wife, defendant slapped him and said "* * * he was going to get everyone, and I should

tell Buck and Belue too." The witness also had told defendant, "What made it bad, a guy that is supposed to be a friend of mine hold a gun on me and take my money," and defendant replied, "Suppose that guy didn't know that you were going to be there." It was shown defendant told witness Buck, " * * * you are going to get yours too * * *," after he had threatened Belue and broken his nose. While commenting on comparable evidence, this court recently said in State v. Mason, Mo., 394 S.W.2d 343, loc. cit. 344: " * * it has long been recognized that evidence of threats by the defendant against witnesses against him may be produced in order to establish his guilt on the original charge." State v. Tippett, 317 Mo. 319, 296 S.W. 132; State v. Rowe, 324 Mo. 863, 24 S.W.2d 1032; Vol. 22A C.J.S. Criminal Law § 633. Although we need not discuss the point further, in view of defendant's extended evidence to establish his alibi, such evidence could also fall within the "identity" exception to the rule against showing prior offenses. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307.

■ Lastly, defendant complains of the so-called "hammer" instruction given after the jury had been deliberating about two hours. It need not be repeated here as it is essentially identical to that set forth in full in State v. Jackson, Mo., 446 S.W.2d 627, 630, and therein approved. State v. Roberts, Mo., 272 S.W.2d 190; Anderson v. Bell, Mo., 303 S.W.2d 93, and State v. Nelson, Mo., 428 S.W.2d 518. Inquiry was also made as to whether or not the jurors thought they could reach a verdict. Nine jurors said, "Yes" and three said "No." Whereupon, they were returned to the jury room for further deliberation. No inquiry was made as to how the vote stood for guilt or acquittal or to ferret out from any juror his personal vote or feelings on the issue of guilt. We can not believe that such an inquiry had a coercive effect on any member of the jury. However, we would be remiss if we did not suggest that such action, even though proper, should not

be followed until such time as the jury has had sufficient time to deliberate—which necessarily would vary with the complexity of the issues submitted.

Finding no error, the judgment is affirmed.

All of the Judges concur.