STATE of Missouri, Respondent,

v.

Robert F. ALLEN, Appellant.

No. 56313.

Supreme Court of Missouri, Division No. 2.

Nov. 8, 1971.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

Shaw & Howlett, by Joseph Howlett, Clayton, for appellant.

PRITCHARD, Commissioner.

A jury found appellant guilty of forcible rape and assessed his punishment at 45 years in accordance with which the court imposed sentence. Appellant seeks reversal upon points I and II, that his motion to suppress his confession should have been sustained because there was no evidence that he intelligently waived the right to counsel, and that the court erred in finding, as a matter of law, that he waived his right to counsel; III, that a mistrial should have been declared when witness Farmer referred to evidence of other crimes, "rape and robbery charges"; IV, that there was insufficient evidence upon which to predicate a conviction; and V, that the court erred in refusing appellant's Instruction A relative to the jury's duty if it was unable to agree on punishment, or the issue of guilt or innocence.

As to points I and II, relating to an intelligent waiver of counsel, the record is not silent as appellant contends as being within the ban of presuming waiver from a silent record under Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed. 2d 694. What happened is this: Appellant was advised by officers of his "Miranda" rights on three separate occasions: when he was arrested; when he was held at the Eighth District Holdover Police Station; and when, thirty minutes later, he was at police headquarters. On the first two occasions appellant remained silent, but on the third occasion when he was again ad-

vised of his rights he stated he understood them and that he wished to make a statement. There was no evidence at the pretrial motion to suppress that there was any coercion, threats or promises. There was no lengthy interrogation, no incommunicado incarceration. Appellant did not testify at the pretrial hearing, but did so at the trial where he testified he was physically abused, threatened and given promises—such testimony being directly controverted at trial. It further appears that appellant was at the time of trial nineteen years of age and had an eleventh grade education. It is apparent that the trial court did not err in overruling the motion to suppress the confession, or in finding that it was voluntary after the pretrial hearing. State v. Auger, Mo., 434 S.W.2d 1, 6; State v. Hughes, Mo., 460 S.W.2d 600. Under the facts, State v. McGee, Mo., 447 S.W.2d 270, does not aid appellant.

■ During the direct testimony of Officer Oscar Farmer, the state inquired of him where he had first seen appellant. He answered "District Eight," and that appellant was in custody at that time, and "Q. And under what charge was he in custody? A. He was charged rape, robbery. Q. No, I am—MR. HOWLETT: Objection, your Honor, please. Q.—talking about this particular case." The ground for the objection was stated by counsel, and was sustained by the court, and upon request the jury was instructed "to disregard the last statement of the officer concerning any robbery; it will be stricken from the record." The request for mistrial was not granted. In view of the prosecuting attorney's statement that he was talking about this particular case, and the court's instruction to disregard the robbery matter, the error, if any (there was testimony that robbery was perpetrated when the prosecutrix was abducted), was cured. State v. Mallory, Mo., 423 S.W.2d 721, 723 [3]. The matter was not so inflammatory as to be prejudicial as was the case in State v. Hancock, Mo., 451 S.W.2d 6, 9 [3], where there was insufficient evidence

to support the charge. See also Holt v. State, Mo., 433 S.W.2d 265.

On September 12, 1969, Carol Schroeder, the prosecutrix, and her roommate, Diane Thompson, lived at 823 Gustav in north St. Louis, Missouri. That evening, according to Diane, she and Carol visited the aunt and uncle of the latter near Normandy in St. Louis County, and left there about ten minutes to one o'clock. They traveled on Natural Bridge, intending to go north on Goodfellow but could not make a left turn at that intersection. They traveled south on Goodfellow, drove in a parking lot intending to make a U-turn, when a blue car blocked the car from going farther. There were four colored occupants in that car, three of them got out and pointed guns at Diane's car, and two of them went to each side of Diane's car and ordered her to open the door. The two girls were ordered to get out of the car, which they did. Then the two girls got back into Diane's car with Carol in the front seat with one male Negro, and Diane in the back seat between two Negroes. The driver drove Diane's car about 10 to 20 feet onto Goodfellow where the car stopped, and the three Negroes decided to get in the other car. They left, taking Carol with them and leaving Diane in the back seat of her car. Diane gave a passing police officer a general description of the four young Negro males and told him what happened. She also gave the officer the license number of the car which sped away with Carol about 1:15 a. m.

Carol's version of the facts was substantially the same as Diane's up to the time the four Negroes drove off with her, except that when they first stopped the men took their purses and went through them. Thereafter the four men drove away with Carol between two of them in the back seat with her face down so she could not see. They drove for about ten minutes to a place she later determined was O'Fallon Park. There everybody got out and walked, and the men ripped all of Carol's clothes off of her. All four of the men sexually attacked her and each one had an act of

intercourse with her over a period of about half an hour. Carol then tried to get her clothes, but one article was grabbed from her and torn up, and she was told, "You're going like you are, and if you scream I'm going to kill you." They got back into the car, drove about ten minutes to a big alley surrounded by a big lot and two or three fallen down houses, later determined by Carol to be Hebert Street. All four of the men then again made sexual attacks on her, a total of three each. There Carol got a close look at each one of the Negroes, and she identified appellant in court as being one of the men who made sexual penetration of her.

After the incidents, the men ran away, down the alley, and Carol found a piece of cardboard to cover herself and went to the home of Detective Armstrong who reported the matter to the police. Carol did not give a detailed description of the men to the police, two were smaller and two were bigger, but appellant appeared to be the leader, telling all of them what to do. Carol later picked out appellant from three other subjects in a lineup within two seconds.

Officer William Monroe arrested appellant on October 14, 1969, being aware that there was an arrest order out on him for the charge here in issue. He conveyed appellant to the Eighth District Holdover Station and there advised him of his constitutional rights.

At the police headquarters, 1200 Clark, Officer Oscar Farmer advised appellant of his constitutional rights, and appellant stated he fully understood. Appellant then made a statement that he and three others headed off two ladies in an automobile, and two of the men got out with drawn guns and made the two ladies stop their car and get out, and appellant took $45 from a purse of one of them. They drove away with the victim in the rear of the car where appellant saw one of the men tear her dress off. They drove out to O'Fallon Park and the three other men took turns raping her. Appellant held a gun on her during this time. Appellant, because of a narcotic or something he had, was unable to rape her, and later, in the vicinity of Grand and Hebert, he forced her to commit an act of sodomy on him. There were no promises, threats or means of coercion used to obtain the statement from appellant, which was given before Carol viewed him in the lineup, at which time he had counsel present—someone from the Public Defender's office—a Mr. Perryman.

Appellant argues that Carol's testimony as to her identification of appellant exposes a lack of knowledge on her part, and thus is without probative value. He concedes that Carol did identify him as one of her assailants, but says the foundation for the identification was not properly laid because she testified that immediately following the incident she was unable to give a detailed description—definite weight or height, and could use only words such as husky, big or taller. She noticed nothing remarkable about the faces of any of the men, but on cross-examination appellant's facial features were brought to her attention—a scar, the lips, splotches, and a deep furrow on the forehead. None of these things had been reported to the police immediately following the incident.

■ The matter of Carol's failure to give a detailed description of appellant immediately following the incident, in view of her positive in-court identification and her lineup identification, was for the jury to determine. Coupled with the evidence of appellant's statement, although he denied that he himself actually raped Carol, and considering all of the corroborating circumstances, it is clear that a submissible case of forcible rape was made by the state.

■ Refused Instruction A refers to the deliberation of the jury on the issue of guilt or innocence, but if it agreed on guilt and not on punishment it could return such a verdict, and the court would then assess punishment. An *exact* instruction to the

one refused was given in Instruction 5. The matter was fully covered. There can be no error in giving an instruction word for word the same as one requested but refused. State v. Huffer, Mo.App., 424 S. W.2d 776.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.