**STATE of Missouri, Respondent,**

v.

**Eugene Monroe MORRIS, Appellant.**

**No. 56870.**

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James W. Huck and Michael Horn, St. Louis, for appellant.

HENLEY, Judge.

Eugene Monroe Morris (hereinafter defendant) appeals from a judgment sentencing him to imprisonment for a term of ten years upon his conviction by a jury of assault with intent to kill with malice. Sec. 559.180, RSMo 1969, V.A.M.S.

There is substantial evidence from which the jury reasonably could find that during the evening of October 3, 1969, at about 7:00 o'clock, Jack Titone, an officer of the Metropolitan St. Louis Police Department, received information through his police car radio that an armed robbery had been committed on Manchester avenue a few minutes before by three Negro males, ages 21 to 25, driving a tan or beige 1965 Pontiac bearing no license plates; that he saw an automobile meeting this description occupied by three Negro males proceeding east on Chouteau and followed it; that he saw and identified defendant sitting in the back seat, and stopped the Pontiac in front of 722 Chouteau; that as he alighted from his police car he called on his radio for assistance, and ordered defendant and the other occupants to get out of the Pontiac and stand on the sidewalk. They did so, but as defendant and one of the men reached the sidewalk they started walking away. He ordered them to halt, but instead defendant turned and fired a shot at the officer and then ran. Other officers apprehended defendant within a few minutes and returned him to the scene where he was identified by Officer Titone. At the time of his apprehension defendant was armed with a .38 caliber automatic pistol.

Defendant's first point is that the court erred in overruling his motion to suppress the in-court identification, because the confrontation with the officer at the scene after apprehension was "* * * so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law * * *." He cites in support of his point United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; State v. Hamblin, Mo., 448 S.W.2d 603. We said in State v. Townes, Mo., 461 S.W.2d 761, 763–64, that *Wade* and *Gilbert* do not apply to a prompt on-the-scene confrontation, such as is presented in this case. See also State v. Hamblin, supra. We find no evidence from which it could be concluded that the on-the-scene confrontation was suggestive or conducive to irreparable misidentifica-

tion, and defendant points to none. The officer had an opportunity to and did see defendant close up under well-lighted conditions while following the Pontiac and as defendant alighted from the automobile and went to the sidewalk, and again under the same conditions when he identified him. State v. Bibbs, Mo., 461 S.W.2d 755, 757–58[1]. Furthermore, the Supreme Court of the United States held on June 7, 1972, in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, that *Wade* and *Gilbert* are not applicable to pre-indictment confrontations.

■ Defendant's next point is that the court erred in giving instruction No. 8, the so-called "hammer" instruction. The instruction was given after the jury had deliberated almost two hours and after the court had determined by inquiry that the foreman believed they could reach a verdict although at the time their votes had been "about even." The instruction is identical to one given and approved in State v. Jackson, Mo., 446 S.W.2d 627, 630. The same instruction was given under circumstances not unlike those in this case in State v. Corlew, Mo., 463 S.W.2d 836, 840[6]. The point is ruled against defendant.

■ Defendant's last point is that the court erred in accepting the verdict from the jury, because there was evidence that the sheriff had communicated with them during their deliberations in violation of § 546.240, RSMo 1969, V.A.M.S.[1] The record shows that sometime after instruction No. 8 had been given and the jury had again retired to deliberate, the jury was returned to the courtroom and the following occurred:

"THE COURT: Ladies and gentlemen of the jury, have you arrived at a verdict?

"MR. GURLEY [foreman]: Yes, we have, your Honor.

"THE COURT: Would you pass it to Mr. Bailiff, please?"

\* \* \* \* \* \*

"THE COURT: Ladies and gentlemen of the jury, the verdict that—purported verdict that has been returned, as I read the verdict, has been signed by ten people, ten of your number; is that right, Mr. Foreman?

"MR. GURLEY: Yes.

"THE COURT: And, then, I take it, that you could not get a unanimous verdict.

"MR. GURLEY: We did reach a unanimous verdict. We misunderstood the sheriff's instructions and we all started to sign it. In other words, we only had ten signed when the sheriff arrived and told us we were doing it not according to what you instructed us. That's the reason.

"THE COURT: Well, ladies and gentlemen of the jury, is it possible for you to reach a verdict in this case?

"MR. GURLEY: We did reach a unanimous verdict.

"THE COURT: I'm going to return the jury upstairs for further deliberation in this matter. Follow the instructions of the Court, please.

"(Whereupon, the jury was returned to the jury room and at 7:40 p.m. the jury again returned to the courtroom at which time the following proceedings took place in open Court, in the presence of the defendant and respective counsel and within the presence of the jury:)

"THE COURT: Ladies and gentlemen of the jury, have you arrived at a verdict?

---

1. This section of the statute provides: "When the argument is concluded, the jury may \* \* \* retire for deliberation. They may retire under the charge of an officer who, in the case of a felony, shall be sworn to keep them together in some private \* \* \* place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict \* \* \*."

"MR. GURLEY: We have, your Honor.

"THE COURT: Would you pass it to Mr. Bailiff, please?

"(Thereupon, the verdict of the jury was relayed to the Court.)

"THE COURT: Would you read that?

"THE CLERK: Members of the jury, please rise.

"Your Honor, in Cause No. 2392–R, State of Missouri versus Eugene Monroe Morris * * * [w]e, the jury in the above entitled cause, find the defendant guilty of Assault With Intent To Kill With Malice. Signed—Hanley W. Gurley, Foreman.

"THE COURT: Poll the jury, please.

"(Thereupon, the jury was polled by the Clerk of the Court, and each juror answered in the affirmative upon being asked if the above and foregoing verdict was said juror's verdict.)

"THE COURT: Very well.

"Mr. Foreman, the Court will address his remarks to you. At the time that you returned—the jury returned the first verdict in this case it was signed by you as the foreman and also nine other jurors. Were the other two jurors going to sign that verdict?

"MR. GURLEY: Yes, they were.

"THE COURT: You were?

"MR. GURLEY: Yes.

"THE COURT: Now, if any of you jurors have a different answer than Mr. Foreman I want you to raise your hand.

"The second verdict that you have returned signed by you alone, Mr. Gurley, does that verdict reflect the decision arrived at by this jury in accordance with the first verdict that you attempted to sign?

"MR. GURLEY: Yes, it does."

As demonstrated by this quotation from the record, the trial judge very carefully and thoroughly examined the foreman and the other members of the jury to determine whether the verdict form signed by the foreman alone represented the true verdict of the jury and the same verdict the jury had originally determined when they brought in the verdict form signed by ten jurors. It was further developed by questions from the judge that the other two jurors had intended to sign the first verdict form, but were unable to do so because of an interruption after the jury had "buzzed" to be brought into the courtroom. From this examination the court determined that the verdict signed by the foreman was the true verdict and that the verdict form signed by ten jurors was the same. The judge inquired of counsel whether they would like to make any inquiry of the jury. Neither counsel for the state nor defendant took this opportunity. Defendant made no objection to these proceedings at any time, nor did he make any objection to the court accepting the verdict. The cases cited by defendant are distinguishable on the facts.[2] It is obvious from the foreman's statements that the sheriff's remark to the jury that all did not need to sign was made *after* the jury had finished its deliberations and reached its verdict, *after* the jury had "buzzed" for the sheriff to open their door and return them to the courtroom, but *before* each of the twelve jurors, erroneously believing all must sign, had had an opportunity to affix his signature to the verdict form. We have the view, and hold, that in the circumstances described in this case, the sheriff's communication to the jury was harmless, was not prejudicial to defendant, and did not invalidate the verdict.

The judgment is affirmed.

MORGAN, P. J., DONNELLY, J., and CONNETT, Special Judge, concur.

2. State v. Quinn (1966), 405 S.W.2d 895; State v. Hayes (1929), 323 Mo. 578, 19 S.W.2d 883; State v. Jones (1953), 363 Mo. 998, 255 S.W.2d 801.