STATE of Missouri, Plaintiff, Respondent,

v.

Lowell COCHRELL, Defendant-Appellant.

No. 34848.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 13, 1973.

Armstrong, Teasdale, Kramer & Vaughn, Larry B. Luber, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Richard S. Paden, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

DOWD, Chief Judge.

The defendant, Lowell Cochrell, was found guilty by a jury of the statutory rape of a fourteen year old girl. He appeals from the judgment sentencing him to a term of thirty-five years imposed under the Second Offender Act.[1]

The prosecutrix, V——— H———, after attending a movie and a party, went to the house of a friend where she and her sister were to spend the night. The friend, Mrs. Schoeneich, lived in the 4300 block of Gibson Avenue in the City of St. Louis.

The victim arrived at the Gibson address about 3:30 a. m. on September 25, 1971. Shortly thereafter, she was requested by Mrs. Schoeneich to walk to a service station about a half a block away to purchase a soda. There was one fluorescent light on in the station, a light on the soda machine, and some street lighting near the station.

A man approached her, offering to help when the soda machine failed to work. The prosecutrix obtained a soda and proceeded to return to Mrs. Schoeneich's home. As she neared her destination, this man grabbed her and began choking her. He threatened to kill her if she screamed.

---

1. The prior conviction was assault with intent to ravish with malice aforethought.

Affirmed by the Supreme Court 470 S.W. 2d 507.

He forced her to a shed in the vicinity. He then made her remove her slacks and underwear.

The assailant proceeded to have intercourse with her twice and forced her to commit an act of sodomy. The facts of the offense are revolting and need not be detailed here. After this, prosecutrix was permitted to put on her clothing, and her assailant walked her down the street. The victim was forced to remain with the defendant for about an hour and a half. She escaped and ran back to the house screaming.

The above facts were established during the prosecutrix's testimony. She also testified that she was born on July 18, 1957; that she was fourteen (14) years old.

The police were summoned to the house. Patrolman Hertling arrived at the house shortly after 5:20 a. m. The prosecutrix identified her assailant as a Negro male wearing a grey jacket, grey slacks, a checkered shirt, having a mustache, being approximately five feet seven inches tall, weighing about 175 lbs. with heavy build and a dark complexion. Officer Hertling testified that he was given this description. The prosecutrix also testified to having given substantially the same description to this officer. This description was broadcast over the radio at approximately 5:25 a. m.

Patrolman Gavin testified to having arrested the defendant, pursuant to the description given by Patrolman Hertling. The arrest took place about 5:20 to 5:30 a. m. on September 25 about a block from the scene of the crime. Patrolman Hertling brought the prosecutrix to the location where the defendant had been arrested and was now being detained. Defendant was the only Negro at the location. Prosecutrix, at this time, positively identified defendant as the man who had been at the service station and who was her assailant.

At the time of his arrest, defendant claimed he was going to work. Patrolman Gavin went to the place where defendant stated he worked. He was informed by the supervisor there that defendant was not scheduled for work on September 25 as defendant had claimed.

Prosecutrix was then taken to the hospital. A laboratory report and medical records for prosecutrix for that night indicated that a vaginal smear had been taken and had indicated the presence of spermatozoa.

The only conflict in the evidence which defendant's attorney sought to establish went to an inconsistency between the description prosecutrix gave the police and facts relating to the defendant. Defendant's clothing at the time of arrest consisted of blue pants and a green coat while prosecutrix had described her assailant's clothing as grey coat and pants. In response to questioning by defendant's attorney, the prosecutrix stated that she was not color blind but that the pants still appeared grey as she viewed them in the court room.

Prosecutrix, during her testimony, again positively identified defendant as her assailant. The judge then asked the prosecutrix the basis of her identification. She replied that defendant's face was the basis. Defendant's attorney then brought out that defendant had no distinguishing characteristics other than his mustache which was somewhat smaller at the trial than it had been at the time of the crime.

Defendant offered no evidence. The judge ascertained out of the hearing of the jury that the defendant knew his rights concerning testifying at the trial, and he did not wish to testify.

The judge then instructed the jury. About one and a half hours later an additional instruction was given (to be discussed infra). The jury returned a verdict of guilty, and defendant's punishment was assessed by the court at 35 years.

Defendant here contends that the one-man confrontation between the defend-

ant, who is a Negro, and the white prosecutrix shortly after her rape denied defendant due process of law in that the confrontation was unnecessarily suggestive and conducive to irreparable mistaken identification. This assignment of error has not been set forth in defendant's motion for new trial. It has, therefore, not been preserved and is not before us on appeal. Rule 27.20(a)[2]; State v. Phelps, Mo., 478 S.W.2d 304.

However, we have reviewed the defendant's contention, despite the waiver, and have determined that the confrontation did not constitute a denial of due process of law. Grant v. State, Mo., 446 S.W.2d 620, involved a confrontation between a rape victim and a man arrested pursuant to the victim's description. The defendant in that case was brought to the victim's house approximately thirty minutes to one hour after the rape; he was handcuffed at that time; and he was the only Negro in the house. The Supreme Court, in holding that the confrontation was not a denial of due process of law, stated at p. 621–622:

"In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1957, 18 L.Ed.2d 1199, commenting upon the criticism of the practice of showing suspects singly to persons for the purpose of identification, the court made it clear that 'a claimed violation of due process of law in the conduct of a confrontation depends upon the totality of the circumstances surrounding it, * * *.' 388 U.S., 1.c. 302, 87 S.Ct. at p. 1972. * * *"

"While there was no emergency situation there was an urgency in the circumstances of Grant's case which justified the procedure adopted by the officers. A heinous crime had been committed. The officers had the responsibility of ascertaining the identity of the criminal. Their attention having been directed to appellant, and he having been taken into custody, it was important in those early moments of the investigation that he either be detained as the suspect or released and the investigation continued without interruption in the effort to identify and find the attacker. * * * In the totality of the circumstances there was no unfairness or unnecessary risking of irreparable mistaken identification."

*Grant* is applicable to this case and is decisive as to this contention.

■ The victim here had a sufficient opportunity during the hour and a half time she was forced to remain with defendant to observe the defendant before and during the commission of the rape. Her opportunity to identify the defendant was aided by a fluorescent light on in the station, a light on the soda machine and street lighting near the station. Her identification of the defendant at the confrontation as well as at the trial was positive. As was said in *Grant* and State v. Brownridge, Mo., 459 S.W.2d 317: "Virtually no other crime offers the opportunity for observation of the perpetrator as the crime of rape." Even if there were some basis for defendant's contention, we feel that an independent basis for the in-court identification exists. State v. Brownridge, supra.

Therefore, we find no merit in defendant's contention that he was denied due process of law because of the confrontation with the victim.

■ Defendant next contends that the verdict was against the weight of the evidence on account of an inconsistency between the description given by the victim to the police as to her assailant's clothing and the clothing defendant was wearing at the time of his arrest. Any inconsistency must be resolved by the jury. The Supreme Court has held that the testimony of a single witness, if believed by the jury beyond a reasonable doubt, is sufficient to establish the identity of the defendant in a criminal prosecution since the credibility of

2. All references to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

the witness and the weight of the evidence is for the jury. State v. Williams, Mo., 376 S.W.2d 133, 136.

Also, in State v. Allen, Mo., 472 S.W.2d 358, 361, the court stated that the matter of a rape victim's failure to give a detailed description of her assailant immediately following the incident, in view of her positive in-court and line-up identification, was for the jury to determine. In the case at hand, the victim's answer to the trial judge that she based her in-court identification on defendant's face makes the alleged error appear even more insignificant.

■■ Finally, it is well settled that the issue of whether a verdict is against the weight of the evidence is for the trial court to determine in ruling on the motion for a new trial. The weight of the evidence is not a matter reviewable by an appellate court. State v. Talbert, Mo., 454 S.W.2d 1; State v. Morgan, Mo., 453 S.W.2d 932.

■ We find sufficient evidence to support the jury's verdict in this case and reject defendant's contention.

The defendant next asserts that the trial court's Instruction No. 1 erroneously submitted the issue of rape rather than statutory rape as charged in the information, thus prejudicing and inflaming the jury. The defendant argues it was error not to use the word statutory before the word rape in the instruction. No citation is given to support this contention. Section 559.260 states in part:

"Every person who shall be convicted of rape, either by carnally and unlawfully knowing any female child under the age of sixteen years, or by forcibly ravishing any woman of the age of sixteen years or upward * * *."

■ The Supreme Court has stated that under this statute rape is either the carnal knowledge of a female under the age of sixteen years or the forcible ravishment of any woman over the age of sixteen. State

v. Baker, Mo., 276 S.W.2d 131, 133. Statutory rape is not a separate offense in Missouri. The term statutory merely connotes that consent is not a lawful defense to the charge of rape of a female under the age of sixteen. That part of Instruction No. 1 which is attacked stated:

"The Court instructs you that if you find and believe from the evidence in this case, beyond a reasonable doubt, that at the City of St. Louis, Missouri, on September 25, 1971, the defendant did unlawfully and feloniously rape and carnally know V——— H———, and if you further find and believe beyond a reasonable doubt that the said V——— H——— was a female child under the age of sixteen years, then you will find the defendant guilty of rape; and unless you so find the facts to be, you will acquit the defendant.

"By the laws of this State, a female child under the age of sixteen years is incapable of giving legal consent to an act of intercourse, and such act, if you find it was committed, of carnal intercourse with such child under · sixteen years, will constitute the crime of rape, whether with or without the consent of such child." (The victim's name has been deleted by this Court.)

■ Any further discussion of this point would constitute unnecessary verbiage. We feel this assertion has no merit and hold that Instruction No. 1 is correct.

■ Defendant's final assertion is that the trial court erred in giving Instruction No. 8. Defendant contends that instruction coerced the jury into returning a verdict due to the nature of that instruction and the short time the jury deliberated before it was given.

Instruction No. 8 is the so-called "Hammer" instruction. Identical instructions have been approved by the Supreme Court, and we do not, therefore, feel it necessary to repeat the instruction here. State v.

Morris, Mo., 484 S.W.2d 288, 290; State v. Jackson, Mo., 446 S.W.2d 627, 630.

This instruction was given after the jury had deliberated for about one and a half hours and after the jury foreman had stated that he thought the jurors' decisions were conclusive and could not be changed. In addition, just prior to the giving of this instruction the judge instructed the jury to reread the other instructions and to "deliberate some more." The jury returned the guilty verdict about forty minutes after Instruction No. 8 had been given. All these circumstances surrounding the giving of this instruction have been held not to be coercive in past cases.

■ This instruction given after the jury had deliberated for about one hour and forty minutes has been approved. State v. Smith, Mo., 431 S.W.2d 74, 86. The jury must be given sufficient time to deliberate, but what constitutes sufficient time varies with the complexity of each case. State v. Corlew, Mo., 463 S.W.2d 836, 840.

■ Likewise, giving such an instruction after notification that the foreman or the jurors felt more deliberation would not lead to a verdict is not error. State v. Corlew, supra at 840; State v. Smith, supra at 86.

Here the judge instructed the jury to reread the other instructions and to "deliberate some more" and then gave this instruction. We do not believe the giving of this instruction under the circumstances of this case was coercive.

Lastly, the fact that the jury returned a verdict about forty minutes after the giving of Instruction No. 8 does not establish coercion. See State v. Barron, Mo., 465 S.W.2d 523, and State v. Jackson, supra, involving less time between the giving of the instruction and the returning of the verdict than was involved here.

As we are required to do under Rules 28.02 and 28.08, V.A.M.R., we have considered and examined the information, verdict, judgment and sentence and find them all to be proper. Therefore, the judgment is affirmed.

WEIER, J., concurs.

McMILLIAN, J., dissents in separate opinion.

McMILLIAN, Judge (dissenting).

I dissent.

While I recognize that whether or not the "Hammer" should be swung and when to do so is discretionary with the trial court, State v. Barron, Mo., 465 S.W.2d 523, in my opinion, in this case there was an abuse of discretion. Here the defendant was charged with a very grave offense. The trial lasted for a day and a half; six witnesses testified, one of whom was recalled for further examination; twelve exhibits were placed before the jury; and final arguments were thereafter made (the record is silent as to the time allowed). Within an hour and a half, the foreman reported back to the court that they stood "ten guilty, one undecided, and one not guilty", and that a verdict could not be reached. Rather than returning them back to the jury room for further deliberations, the court gave the so-called "Hammer." Forty minutes later the jury returned with a verdict of guilty.

In this case the jury had to evaluate and consider testimony of six witnesses, inspect twelve exhibits, put into proper perspective the final arguments of counsel and to relate the seven instructions given by the court to the facts as found. While there is no mathematical formula which specifically prescribes the amount of time to be allowed for deliberation in ratio to the length of trial time and the number of witnesses, our test has always been one of reasonableness. Even though I understand that trial judges are overworked, and their dockets are overcrowded, yet in the desire

to bring cases to a conclusion they can ill afford to put into question the quality of the trial given.

We must not underestimate the intelligence of our jurors, whom, in my opinion, without being told by the court know that trials are costly, that a verdict should be reached in every case, and that the opinion of other jurors should be respected. Taking into consideration the length of trial time, the number of witnesses that testified, the issues involved, the number of exhibits to be examined, and the time required to evaluate the final arguments, I hold that the giving of the "Hammer" instruction No. 8 after the lapse of an hour and a half was an abuse of discretion. Therefore, I would reverse the conviction and order a new trial for the prejudicially given Instruction No. 8.