**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Garland Loy COOK, Defendant-Appellant.**

**No. 35289.**

Missouri Court of Appeals,
St. Louis District,
Division 1.

Aug. 6, 1974.

Robert E. Ahrens, Armstrong, Teasdale, Kramer & Vaughan, Larry B. Luber, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, Asst. Attys. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., John F. White, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Chief Judge.

Defendant was charged by indictment with murder in the second degree and a prior felony conviction. The jury found defendant guilty of manslaughter (§ 559.-070) and the court sentenced him under the Second Offender Act (§ 556.280) to ten years imprisonment. Defendant appeals.

Defendant raises two points on this appeal, both of which involve instructions. Defendant contends: (1) the trial court erred in failing to submit an instruction on accidental homicide; (2) the court erred in giving the hammer instruction.

Defendant does not attack the sufficiency of the evidence to support the conviction. Therefore, the facts will only be related as they pertain to the contentions raised. On the evening of July 6, 1972 at about 10:00 p. m. Emory Gabel was shot twice, once in the chest and once in the head. A policeman found him lying alongside the sidewalk near a bar in South St. Louis. He died five hours later.

The incident began inside the bar when defendant and Gabel became involved in an argument which resulted in defendant and Gabel shoving each other. Gabel then obtained a gun from his girl friend's purse. Gabel shot at defendant and as defendant ran out the door, Gabel shot at the defendant again. There was also evidence that Gabel shot at the defendant when they were both outside the bar. As the defendant was running from Gabel, the defendant fell and Gabel had his gun pointed at the defendant. A Charles Glore then intervened and escorted defendant to his auto. Defendant got in his auto, started the engine and turned on the lights of the auto. Gabel, holding a pistol, was then near the front end of defendant's auto. Defendant obtained a pistol from his auto; jumped out; shoved Glore aside and shot Gabel in the chest. Before shooting Gabel, the defendant said to the victim, "I'm going to give you a whole lot of what you wanted to give me a little of." After being shot, Gabel either dropped his pistol or gave it to his girl friend. Gabel clutched his right chest and walked backward down the street and around the corner. Defendant with his gun drawn pursued the victim down the street. While retreating, Gabel no longer had a gun and as the defendant approached Gabel, he was holding up his hands and stated to the defendant, "Don't shoot, please, Don't shoot, I don't have a gun." At this time the victim's girl friend pointed a gun at the defendant. The defendant stated he heard a gun discharge. As the defendant turned towards the girl friend, Gabel began struggling with the defendant and the gun discharged. Gabel fell to the

sidewalk and defendant fled the scene in his auto.

After all the evidence had been presented at the trial, the judge instructed the jury on second-degree murder, manslaughter, and justifiable homicide. The jury retired to deliberate, and after about three hours of deliberation, the jury returned and stated that up to that time it had not been able to reach a verdict. The judge then read the hammer instruction and sent the jury back for further deliberation. Within fifteen minutes the jury returned its verdict finding defendant guilty of manslaughter.

■ Defendant's first contention here is that the trial court erred in not instructing the jury on excusable or accidental homicide. We disagree. While we recognize that if the evidence warrants an instruction on excusable homicide because of accident, such an instruction must be given as part of the law of the case, whether requested or not. State v. Watson, 364 S. W.2d 519 [10] (Mo.1963). However, we do not believe the evidence warranted such an instruction.

■ An excusable homicide is a killing committed by accident or misfortune in carrying out a lawful act by lawful means. Section 559.050, RSMo 1969, V.A.M.S. This section states in part:

Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases:

(1) . . . in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or

(2) In heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner.

■ The facts in this case here do not place defendant's action in either of the categories of excusable homicide. The defendant had been in a fight with the deceased and the deceased had shot at him. The defendant may have considered himself in danger while sitting in the auto and for that reason pulled his gun and shot the deceased in the chest. But the defendant after shooting the deceased once, pursued the deceased down the street. The victim was retreating and was without a gun and was holding up his hands and begging the defendant not to shoot him. The defendant was then no longer doing the lawful act of defending himself. Defendant was then clearly the aggressor. The resulting struggle with the deceased with defendant's gun being discharged and the deceased being shot in the head did not warrant an accidental homicide instruction. By pointing his gun at the unarmed Gabel, defendant was committing an unlawful act. Here the defendant was in the presence of several persons and by his own testimony the defendant was exhibiting a deadly weapon in a rude, angry and threatening manner which is a violation of Section 564.610. Defendant was thus committing an unlawful act by unlawful means.

The recent case of State v. Browning, 442 S.W.2d 55 (Mo. banc 1969) is very close on point. In that case defendant held a pistol on party guests and refused to allow anyone to leave until his coat was found. The deceased insisted on leaving and grabbed for defendant's gun, the defendant pulled his hand back to keep deceased from grabbing the gun and the gun went off shooting the deceased. The court held defendant had violated Section 564.610, RSMo 1969 (exhibiting a deadly weapon in a rude, angry or threatening manner in the presence of others), and also was guilty of false imprisonment. Since defendant had committed unlawful acts by unlawful means, the court concluded defendant was not entitled to an accidental homicide instruction.

Nor do we believe that defendant's actions fall within category (2) of the statute (§ 559.050) on excusable homicide. The

killing of deceased was not done "in heat of passion, upon any sudden or sufficient provocation." As said, the defendant may have considered himself in danger while still in his car and, for that reason, pulled his gun and shot deceased in the chest. But when the defendant began stalking the retreating and unarmed Gabel, defendant could not reasonably have considered himself in great danger or motivated by the heat of passion. State v. Browning, supra.

Nor is this a case of "sudden combat, without any undue advantage being taken, and without any dangerous weapon being used."

■ We recognize that the defense of excusable homicide, under Section 559.050 RSMo 1969, V.A.M.S., appropriate either under the statute *or* the common law. But both the statute and the common law demand that the defendant acted without wrongful purpose while engaged in a lawful enterprise and without negligence on his part. State v. Browning, supra. Defendant's own testimony, however, demonstrates as a matter of law that he was committing an illegal act when the killing occurred. Accordingly, the evidence did not warrant the giving of an accidental homicide instruction.

■ Defendant contends in his second point that it was error to give Instruction No. 10, the hammer instruction.[1] Defendant contends that this instruction coerced

the jury into the manslaughter verdict. We disagree. Instructions, substantially the same as the one given here, have been approved by the Supreme Court, State v. Jackson, 446 S.W.2d 627, 630 (Mo.1969); State v. Morris, 484 S.W.2d 288, 290 (Mo. 1972); State v. Corlew, 463 S.W.2d 836, 840 (Mo.1971); and, by this court in State v. Cochrell, 492 S.W.2d 22, 27 (Mo.App. 1933); State v. Krech, 492 S.W.2d 123 [2] (Mo.App.); State v. Taylor, 508 S.W.2d 506 [18], (Mo.App.1974).

■ Defendant's primary claim in this point is that insufficient time had transpired between the initial retirement of the jury and the giving of this instruction. Here the jury had deliberated about three hours and was brought back to the court room and the jury advised the judge that up to that time it had not been able to reach a verdict. The jury was not asked how the jury stood numerically. The instruction was then read to the jury.

This instruction has been approved where the jury has deliberated a shorter period of time than here. This instruction, given after the jury had deliberated for about one hour and forty minutes, has been approved. State v. Smith, 431 S.W.2d 74, 86 (Mo.1968). Again in State v. Crawley, 478 S.W.2d 344, 346 (Mo.1972) the Supreme Court also approved the giving of this instruction[2] where the jury had deliberated about one hour and forty minutes. Also, see State v. Cochrell, supra, [9].

1. THE COURT: "'At this time, after you have been deliberating, I give you this additional instruction. It is desirable that there be a verdict in every case. It costs considerable money and time and effort to try any lawsuit and the parties are entitled to have their rights determined once and for all in every case, and the 12 jurors chosen to try this case should be as well qualified to do so as any other 12 that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreement upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue, yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.'"

2. The new Criminal Pattern Instructions effective January 1, 1974 designated as Missouri Approved Instructions-Criminal (MAI–CR) has an instruction (MAI–CR 1.10) which is essentially a hammer instruction.

We do not believe the giving of this instruction under the circumstances of this case was coercive.

Therefore, finding no prejudicial error, the judgment is affirmed.

SIMEONE and WEIER, JJ., concur.