**STATE of Missouri, Respondent,**

**v.**

**Billy Ray BROWNING, Appellant.**

**No. 53541.**

Supreme Court of Missouri,

En Banc.

April 14, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Frederick E. Steck, Special Asst. Atty. Gen., Sikeston, for respondent.

J. Arnot Hill, John J. Cosgrove, Kansas City, The Legal Aid and Defender Society of Greater Kansas City, for appellant.

HOUSER, Commissioner.

Billy Ray Browning, convicted of second degree murder and sentenced to 10 years' imprisonment, has appealed on the sole ground that the court erred in not instructing that defendant should be acquitted if the homicide was excusable on account of accident.

The state's case tended to show these facts: Defendant, one Bell and others attended a private party at a residence in Kansas City. When the party broke up the guests went to the bedroom to get their coats. A guest named Louise discovered that her coat was missing. A search was begun. Defendant came out of the bedroom, stated that his coat was also missing, and that no one would leave until he found his coat. Louise and one James Elliott started to leave but defendant blocked the door, repeating his statement that no one was going to leave until he found his coat. Elliott tried to reason with defendant and went to open the door. Defendant again blocked the door and said "Jim, I'm not playing. Won't no one leave this party until I find my coat." About that time Louise's husband came to the front door and knocked. Elliott suggested that defendant let her go ahead; that she didn't have his coat and that her coat was also missing. Defendant opened the door, permitted Louise to leave, shut the door, pushed Elliott back and pulled out a pistol, saying that no one was going to leave and threatening to shoot anyone that touched the door until he found his coat. Elliott told defendant that he did not have his coat and that he was going home; that if he was going to shoot somebody he had better start shooting because he was going to go out the door. At that point Ellington Bell walked up to defendant and said, "Look, Billy Ray, this man didn't take your coat. He's been here all night. He didn't have anything to do with this. If you shoot this man you are wrong, because this guy didn't take your coat. And if you shoot me you are wrong because you know I didn't take your coat." Bell also told defendant that

he was "wrong keeping these people here like this." Defendant again threatened to kill anybody who touched the door. Bell said, "Billy Ray, I'm going to open this door and you are wrong if you shoot this man and if you shoot me you are wrong." Bell made a motion toward the doorknob "like he was going to pull the door open", or actually put his hand on the door. When he did so defendant pulled the trigger. Bell, struck by a bullet, was taken to a hospital where he died on the operating table as a result of the wound and internal bleeding. After shooting Bell defendant said, "And if anybody else tries to leave here I'll shoot you or you or you. * * * They ain't nobody going to leave until I get my coat."

Defendant took the stand and testified that when he discovered that his coat was missing he pulled out his pistol and said, "No one is going to leave until I find my coat." He testified that he allowed the lady to leave, after which he closed the door behind her and repeated that no one was going to leave until he first found his coat. He said that Bell informed him that he did not have defendant's coat and that he was leaving; that defendant responded by saying, "If you don't have my coat, just show me and you can go" and that Bell said, "I don't have your coat." Defendant further testified that about that time Bell, who was then only a foot or two away from defendant, facing him, "lunged" at defendant "like he was trying to grab the gun" and that when Bell reached for the pistol defendant pulled his hand back to keep Bell from grabbing the pistol and the gun went off. Admitting that he pointed the gun at Bell and that he pulled the trigger, defendant testified that he did not pull the trigger "willingly."

■ Defendant does not seek to justify the killing as in self-defense, but seeks to bring the killing within the purview of § 559.050, RSMo 1959, V.A.M.S., as having been committed by accident or misfortune, and therefore excusable. The alleged error in not instructing on accidental homicide

was not preserved in the motion for new trial and the question before us is whether the judgment should be reversed under Criminal Rule 27.20(c), V.A.M.R.,[1] commonly known as the plain error rule.

Defendant is not entitled to relief under this rule because no error was committed. Defendant was not entitled to instruction on accidental homicide for the reason that the facts of this particular case do not demonstrate a homicide *committed by accident or misfortune in the doing of a lawful act by lawful means,* or otherwise within the definition of excusable homicide in § 559.-050.

Defendant's testimony that Bell lunged at him like he was trying to grab the gun and that the gun discharged when defendant pulled his hand back to keep Bell from grabbing the gun did not require the giving of an instruction on accidental homicide. In holding the guests at bay and pointing the gun at Bell and others defendant was engaged in unlawful acts. By his own admission he was, in the presence of several persons, exhibiting a firearm, a deadly weapon, in a rude, angry or threatening manner, in violation of § 564.610, RSMo 1959, V.A.M.S., which makes that offense a graded felony. By his own admission he was guilty of false imprisonment, by depriving the guests at the party of their liberty. He was committing unlawful acts by unlawful means. An accidental killing does not constitute excusable homicide within the meaning of § 559.050 if the homicide was perpetrated in the commission of an unlawful act. State v. Grant, Mo.Sup., 372 S.W.2d 9 [2] fn. 1; State v. Aitkens, 352 Mo. 746, 179 S.W.2d 84 [19]. Defendant admitted to conduct clearly indicating that he had thrown caution to the winds; that he was acting recklessly, and demonstrating an unlawful intent. This was not "sudden combat, without any undue advantage being taken, and without any dangerous weapon being used." Nor may defendant be said to have acted "in heat of passion, upon sudden or sufficient provocation." There having been no error in the omission to instruct on accidental homicide under the facts of this particular case, we need not pursue the question of plain error any further.

In determining whether appellant was entitled to an instruction on accidental homicide we recognize that the defense of excusable homicide is not restricted to situations described in the two clauses of § 559.-050, supra. The following section, § 559.-060, directs an acquittal if a homicide is excusable either under a statute *or* the common law. See State v. Aitkens, supra, 179 S.W.2d 1. c. 91. Under the common law, however, as well as under the statute, in order for a homicide to be excusable the perpetrator must have acted without wrongful purpose while engaged in a lawful enterprise and without negligence on his part. 26 Am.Jur. Homicide § 220; 40 C.J.S. Homicide § 112 b. As indicated, defendant's own testimony demonstrates as a matter of law that he was engaged in an unlawful enterprise and that he was imbued with a wrongful purpose.

The information, verdict, judgment and sentence are sufficient in form and substance. Defendant received a fair trial. Charged with first degree murder, the jury was instructed on first degree murder, second degree murder and manslaughter. Convicted of second degree murder and given life imprisonment by the jury, the trial judge reduced the punishment to 10 years' imprisonment. Defendant was afforded counsel at the trial, at the time of allocution and sentencing, and he had counsel on appeal who briefed and argued his case.

The judgment is affirmed.

---

1. "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

PER CURIAM:

The foregoing opinion by HOUSER, C., written November 12, 1968, in Division One, as modified, is adopted as the opinion of the Court en Banc. The judgment is affirmed.

All concur.