STATE of Missouri, Plaintiff-Respondent,

v.

Freddie SIMON, Defendant-Appellant.

No. 36679.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 9, 1976.

James C. Jones, III, G. Jeffrey Lockett, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

SMITH, Chief Judge.

Defendant appeals from his conviction and sentence of five years imprisonment upon a jury verdict finding him guilty of manslaughter.

Defendant's major contention is that the court erred in failing to direct a verdict of acquittal because the evidence was not sufficient to establish defendant's guilt. We therefore must review the evidence in the light most favorable to the verdict. As stated in *State v. Thomas*, 452 S.W.2d 160, l.c. 162 (Mo.1970):

"In a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence. . . . Moreover, this Court has made it plain that the mere existence of other possible hypothesis is not enough to remove the case from the jury. If the judge were to direct acquittal whenever in his opinion the evidence failed to exclude every hypothesis than that of guilt, he would preempt the functions of the

jury. Under such a rule the judge would have to be convinced of guilt beyond peradventure of doubt before the jury would be permitted to consider the case. That is not the place of the jury in criminal procedure. They are the judges of the facts and of guilt or innocence, not merely a device for checking upon the conclusions of the judge."

The victim, Lucille Jones, sixty-four years old, lived alone in a third floor apartment. Defendant was seen daily around the apartment for several months prior to November 14, 1973, had visited on occasions with the victim, and on one occasion had been seen to unlock the door to the victim's apartment and enter. On November 14, 1973, about 6 p.m. a Mrs. Clara Moore went to the Jones' apartment to borrow a sewing machine. Prior to going to the apartment, Mrs. Moore called and defendant answered the phone. Ms. Jones eventually came to the phone. Within five minutes, Mrs. Moore arrived at the Jones' apartment. Defendant answered the door and Mrs. Moore entered the apartment. Ms. Jones was lying on the floor next to the couch. Mrs. Moore told her to get up, which Ms. Jones tried to do but couldn't. Mrs. Moore than lifted her onto the couch. The victim's robe was open and she was otherwise unclothed. Mrs. Moore got a washcloth from the bathroom and bathed the victim's face. She noticed that Ms. Jones' lips were bruised but saw no other marks. She also noted that she did not smell alcohol on the victim's breath, although she was within a very short distance of her mouth for some period of time. Ms. Jones asked Mrs. Moore to stay with her, but Mrs. Moore was unable to do so. Defendant was sitting in a chair throughout Mrs. Moore's visit. He was drinking, talking in a fashion where Mrs. Moore could not understand him, and smelled of alcohol.

After leaving the Jones' apartment, Mrs. Moore went back to the first floor and asked another resident of the apartment house to "go up there to Lucille's and stop Simon . . . He's up there beating Lucille." This resident, Tom Hathorne, went to the Jones' apartment and knocked. Defendant answered the door and Hathorne saw Ms. Jones lying on the couch, naked from the waist up. Defendant said, "Are you coming to get me? Just let the doorknob hit you in the back." Hathorne left but saw defendant again about 8 p. m. going up the steps. Another witness, whose testimony was considerably confused as to times, testified that, when defendant left the Jones' apartment on the day before the body was discovered, she heard defendant saying "dirty names."

Around ten o'clock p. m. on the fourteenth Mrs. Moore attempted to call the Jones' apartment but received a busy signal on three occasions. She tried again about 5 a. m. on the fifteenth and when she received another busy, she knocked on the Jones' door and received no response. She heard the radio playing at that time as she had the night before. She heard a car horn honk and went outside to see if it was Lucille's ride to work. Instead it was a man looking for "Mr. Simon." The man reported that he had gone to Simon's house only to find a padlock on his door. Mrs. Moore then called the police.

When the police arrived, both the front and rear doors of the Jones' apartment were locked. After forcing entry, the police found the body of Ms. Jones, lying on the floor near the bed, completely nude. The victim's head had cuts; a "considerable patch" of hair had been pulled from her head; she was lying with a pool of blood under her head. The officer was of the opinion a struggle had taken place in the victim's apartment. The victim's telephone was on the floor, off the hook.

Medical evidence established the cause of death was due to hemorrhage caused by bilateral rib fractures. Ribs two through eight on both sides were fractured as was the sternum. The victim had lacerations of the left ear and numerous abrasions, scrapes and contusions of the chest. The coroner's physician testified that, in his opinion, cause of death could not have been a fall in the room but could have resulted

from one or more severe blows with the fists to the rib area. The victim's blood showed an alcohol level of .067%. The physician could make no estimate of the time of death, or how long after the injury that death occurred.

Defendant was not seen around the apartment house after the evening of November 14. Several police visits to his St. Louis residence were unsuccessful in locating him and his door had been padlocked by the owner of the building. Defendant worked for moving companies and on occasion would accompany truck drivers out of town to assist them on moving jobs. A warrant for defendant's arrest was issued December 4, 1973, and he was arrested in Marion, Arkansas on February 1, 1974. Defendant did not testify and his case in defense consisted entirely of efforts to impeach Mrs. Moore.

The evidence is certainly sufficient to establish that Ms. Jones died from the criminal agency of someone, as a result of a beating. While no evidence directly shows that defendant administered the fatal beating, we find that all of the circumstances and inferences taken together support the verdict. Defendant was a frequent visitor to the apartment and with decedent up until the day of her fatal injury. After that date, he was not seen there again and had left his own apartment. He was seen in the apartment of the decedent twice on the evening of November 14, intoxicated and in a belligerent mood and was saying "dirty names" when he left. His question to Hathorne indicated a belief that his conduct had aroused suspicions and his comment following indicates belligerence. When Mrs. Moore arrived in the room, Ms. Jones was lying on the floor, bruised, and unable to get up. Throughout that period, defendant offered no assistance and no concern for Ms. Jones. Such conduct is difficult to explain unless defendant was responsible for Ms. Jones' condition. While it would appear that the fatal beating occurred after Mrs. Moore's visit, it is not unwarranted for the jury to conclude that a continuing course of conduct was involved. The jury was able to see defendant, which we have not, but the nature of his work would indicate sufficient strength to have administered the fatal beating. His subsequent departure and apprehension in a foreign state are evidence of flight and guilty knowledge. We have here criminal agency, presence of the defendant, conduct evidencing hostility and abuse, and flight. The evidence was sufficient to support the jury finding that defendant was the man who administered the fatal beating.

Defendant argues that the court erred in refusing to instruct the jury on excusable homicide. It is not error to refuse such an instruction where there is no evidence to support such a submission. There is no such evidence here. An accidental killing does not constitute excusable homicide within the meaning of Sec. 559.050 if the homicide was perpetrated in the commission of an unlawful act. *State v. Browning*, 442 S.W.2d 55 (Mo.banc 1969). The accused must act without wrongful purpose while engaged in a lawful enterprise, and without negligence on his part before the instruction can be given. *State v. Cook*, 512 S.W.2d 907 (Mo.App.1974). The deceased was killed as a result of an unlawful act, an assault, and no instruction on excusable homicide was required.

Defendant also complains that the testimony of where defendant was arrested was improperly admitted since no proper foundation for inferring flight was made. We disagree. Defendant's absence from an area he had frequented daily, his move away from his apartment, his inability to be found in St. Louis, and his subsequent arrest in Arkansas raise an inference of flight. The weight of such evidence was for the jury, but the evidence was admissible. *State v. Dupree*, 477 S.W.2d 129 (Mo. 1972) [7].

Judgment affirmed.

ALDEN A. STOCKARD and NORWIN D. HOUSER, Special Judges, concur.