STATE of Missouri, Plaintiff-Respondent,

v.

Michael E. HARRIS, Defendant-Appellant.

No. 37078.

Missouri Court of Appeals, St. Louis District, Division Three.

June 15, 1976.

Motion for Rehearing or Transfer Denied July 9, 1976.

Application to Transfer Denied Sept. 13, 1976.

Robert C. Babione, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Ronald B. Safren, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Michael E. Harris was convicted by a jury of the crime of burglary in the second degree, § 560.070 RSMo. 1969, and the trial court having found, after an evidentiary hearing, that he had previously been convicted of a felony, sentenced him to a term of eight years in the custody of the Missouri Department of Corrections. §§ 560.095(2) and 556.280 RSMo. 1969. He appeals.

By his first point presented to this court he attacks the sufficiency of the evidence to overcome his motion for judgment of acquittal at the close of all of the evidence to sustain a finding that he "broke into the building as required for proof of burglary." In deciding this point after a verdict of guilty by a jury, the reviewing court accepts as true all evidence contained in the record tending to prove the defend-

ant's guilt, whether such evidence is direct or circumstantial in nature, together with all favorable inferences that can be reasonably drawn therefrom and disregards all contrary evidence and inferences. *State v. Reed,* 453 S.W.2d 946, 949[5] (Mo.1970).

The evidence viewed in light of the foregoing principles, shows that Mr. Harris was taken into custody sometime shortly after 1:00 a.m. on September 15, 1974, in the interior of an A & P grocery store located at 2718 South Grand Boulevard in the rear storage area of the store, hiding behind a grocery cart, by Patrolman Al Berberich of the St. Louis Police Department who was in the process of investigating a report of a burglary of the store. At the time the police officers arrived on the scene Officer Berberich observed that the building's scissor-type security door had been pried open and the lock was lying on the ground near the entrance to the store. The jamb of the metal-encased glass exit door was pried open but the bolt was still locked. After the police officers entered the interior of the grocery store they observed one man in the center aisle run towards the rear of the building and near one of the check-out counters they found three plastic bags filled with cigarette cartons. Officer Berberich proceeded to the rear of the building and located two men there hiding behind some boxes. His further search of the premises led to the discovery of the appellant as stated heretofore. All three men taken into custody inside the building were wearing gloves at the time.

Officer Daniel Day, a member of the Evidence Technician Unit of the St. Louis Police Department took into his possession on the scene a tire iron, a chisel and three locks. The tire iron was taken from the front of the store and the chisel from the rear of the store in the trash area. One of the locks, a padlock, was found lying on the floor next to the screened-in liquor department and another in the produce storage area. The third lock was located on the ground behind the front entrance security door. These locks were received in evidence at trial without objection.

Defendant testified in his own defense. He admitted his presence in the store and that at the time he entered he was armed with a tire tool. He also admitted that he had put the cigarettes in the trash bags with the intention of stealing them. He explained that he and his two friends were riding by the store when they observed three or four "guys" at the A & P front door; two of them inside the store and one on the outside; that they returned to the store to scare off these other men by slamming on the brakes of their car, slamming the doors and kicking on the back doors of the store. After they did this, they put on gloves to go into the store and to keep their fingerprints off of things in the store. When they arrived at the entrance to the store a metal grating across the entrance was not open and they had to push it open to get inside. He also testified that at the time of trial he was twenty-two years of age and in 1971 had been convicted in the court of St. Louis of the offense of "Burglary and Stealing" and was sentenced to two years for that offense. He also admitted that in 1973 he was incarcerated in the City of St. Louis and escaped from that incarceration. He pleaded guilty to a charge of escape on that occasion.

 It is apparent from appellant's argument that the element of burglary which he contends was not established is "breaking." The evidence here authorized a finding that someone had entered the locked and closed A & P store without permission. Appellant himself testified that to gain entrance to the store it was necessary for them to push aside a metal grating across the entrance which was not open. The force to constitute a breaking in *burglary second degree* need not be more than the mere pushing open of a door which is shut. *State v. Rhodes,* 408 S.W.2d 68, 70[3] (Mo. 1966), *State v. Cox,* 527 S.W.2d 448, 452[5] (Mo.App.1975). The mere raising of a kitchen window has been held sufficient breaking to support a conviction of burglary in the second degree. *State v. O'Brien,* 249 S.W.2d 433, 434[1–4] (Mo.1952). It has been held that entering a building by push-

ing aside boards barricading a window was "breaking and entering" within the meaning of the second degree burglary statute. *State v. Smith,* 357 S.W.2d 120, 122[3] (Mo. 1962). We conclude that the appellant himself supplied any lack of direct evidence the State may have lacked in its prosecution by his testimony that to gain entrance into the store it was necessary for him and his cronies to push aside the metal grating across the entrance to the building.

■ However, we also conclude that in the absence of direct evidence of "breaking" there is sufficient circumstantial evidence to meet the rigorous tests imposed by law to sustain a conviction on circumstantial evidence alone. From the evidence the jury could find that a burglary occurred; that it was still in progress when the police officers arrived on the scene and that the officers interrupted the burglary thereby preventing the stealing of the trash bags of cigarettes appellant admittedly had placed in the bags for that purpose. The presence of gloves on appellant's hands and on the hands of his cohorts further supports his testimony that they were worn for the purpose of avoiding detection and identity by fingerprints. His presence in the store without the permission of the owner or manager, taken with the other evidence, reasonably precludes any reasonable theory of appellant's innocence. We rule this point against the appellant.

Appellant's second point relied on is that the trial judge erred in permitting the jurors to inspect the two padlocks found at the scene of the burglary by Officer Day. During the course of its deliberations the jury requested that the padlocks be sent to the jury room. Over appellant's objection the trial court sent the padlocks to the jury as requested. Recognizing that discretion resides in the trial judge with respect to whether a jury's request for an opportunity to see and examine exhibits offered and received into evidence should be honored, appellant contends that in this case, however, the trial court abused its discretion. The thrust of appellant's argument is that when cross-examined by defense counsel

Officer Day testified that he could not say whether the locks were cut by a hacksaw; that it was a "part of the central factual issue of appellant's defense" how the locks were broken and the jurors were not qualified to resolve this issue in the absence of any expert evidence to aid them to that end.

■ We hold that there was here no abuse of the trial court's discretion in sending these padlocks to the jury in response to a request from the jury. Despite appellant's insistence that the manner in which the padlocks were cut required expert testimony, we are not convinced that is so. In *State v. Eaton,* 504 S.W.2d 12, 21[18] (Mo. 1973) alleged error based upon the testimony of a police officer that a particular plier could have made the indentation marks on an aluminum door was refuted when the court said that the police officer's testimony was not opinion evidence nor a matter requiring any special training, expertise or knowledge. Nor do we have any indication that it was the purpose of the jury to attempt to resolve any issue concerning whether the padlocks were cut by a hacksaw or some other instrument, as appellant argues.

One of the elements of this case was whether the appellant forcibly broke into the grocery store. The damaged padlocks were some evidence that there was a forcible entry. They were therefore properly sent to the jury for inspection. We also rule this point against appellant.

Appellant's third, and final point, is that the trial court erred in refusing to submit Instructions No. A and B tendered by appellant to the jury on the grounds that they fairly presented his "theory of innocence" and the trial court failed, therefore, to instruct upon all questions of law arising in the case as required by Rule 26.02 and § 546.070 RSMo. 1969. Instruction A advised the jury that if they did not find the defendant guilty of burglary in the second degree, then they should consider whether he was guilty of attempting to steal property of a value under $50.00. Instruction B would have submitted to the jury attempt-

ed stealing of property of a value of more than $50.00. He concedes that these offenses are not lesser included offenses of burglary in the second degree, *State v. Cline,* 447 S.W.2d 538 (Mo. banc 1969), but he argues that he was entitled to have his "theory of innocence" presented to the jury.

 Appellant's "theory of innocence," as we perceive it, is that he was not guilty of burglary in the second degree as charged in the Amended Information because he did not "break" into the grocery store. This theory of innocence was covered by Instruction No. 7–MAI–CR 3.08 [1] —which was given by the trial court. Appellant here was charged with burglary in the second degree, § 560.070 RSMo. 1969; not with burglariously stealing, § 560.110 RSMo. 1969. Under § 560.070 it is an offense to forcibly enter a building in which merchandise or other valuable things are kept with the intent to steal or commit any crime therein. Under this section there can be no conviction in the absence of a breaking and entering with a specific intent to steal or commit another crime therein. The instructions tendered by appellant would have constituted misdirection of the jury because they would have submitted offenses which are not lesser included offenses of the crime charged and which were not charged in the Amended Information upon which appellant was brought to trial. [2] We rule this point against appellant.

We have examined those portions of the record as required by Rule 28.02 and find them to be sufficient.

The judgment of the trial court is affirmed.

SIMEONE, P. J. and GUNN, J., concur.

1. Although Instruction No. 7, submitted by the appellant, is identified in the transcript and by the parties to this appeal as an MAI–CR 3.08 instruction—"Converse: Multiple Elements"—it is, in fact, a modified MAI–CR 3.04—"Converse: One Element"—pattern instruction.

2. Although neither party to this appeal presented the question whether an instruction on attempt would have been proper in this case, where there is evidence of asportation sufficient to support the completed offense of steal-

ing, § 556.160 bars conviction of an attempt where it appears that the crime intended or the offense attempted was perpetrated. Appellant, by his own testimony, established that there was sufficient asportation of the cigarettes when he put them in the trash bags to constitute the completed offense of stealing. See: *State v. Smith,* 342 S.W.2d 940, 942[4] (Mo. 1961), *State v. Cline,* 452 S.W.2d 190, 193[6] (Mo.1970).