STATE of Missouri, Plaintiff-Respondent,

v.

Lonnell WILLIAMS, Defendant-Appellant.

No. 37641.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 9, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Application to Transfer Denied
Feb. 14, 1977.

Scott Richardson, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., George A. Peach, III, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted of the second degree murder of Dan Rogan and sentenced to life imprisonment. On appeal, defendant charges that the trial court erred: 1) in overruling defendant's motion for judgment of acquittal; 2) in refusing to give an excusable homicide instruction; 3) in restricting cross-examination of a State's witness. We find no error and affirm the judgment.

A friendly kiss placed by defendant on the cheek of Jackie Rogan, Dan Rogan's estranged wife, triggered Rogan's death. Defendant and a couple of friends stopped by Jackie Rogan's parents' house in St. Louis where a family soiree was in progress. Dan Rogan was also present, visiting Jackie. As defendant walked on the front porch, he paused to kiss Jackie lightly on the cheek or forehead. Rogan took umbrage over defendant's action and became bellicose. A brief struggle ensued between defendant and Rogan during which no blows were struck. Defendant departed but soon returned with two friends. The State's and defendant's evidence sharply diverge as to what next occurred. State's witnesses testified that as defendant approached the house on his return, he was brandishing a pistol; that Dan Rogan came out of the house, unarmed, shouting at the defendant, "kill me, kill me"; that defendant then fired two shots at Dan Rogan, one striking him over the eye and inflicting a mortal wound.

Defendant's version of the occurrence is that he returned to Jackie Rogan's parents' house ostensibly for the purpose of extending his apologies; that as he approached the house, Dan Rogan came running at him with his hands behind his back, threatening

to kill defendant; that defendant hastily retreated, firing his pistol twice into the air as a self-defense measure intending only to frighten Rogan; that somehow one of the bullets struck Rogan in the eye.

At the State's behest, the jury was instructed on first and second degree murder. Defendant's self-defense instruction was also given, but his request for an excusable homicide instruction was denied.

Defendant first contends that the trial court erred in overruling his motion for judgment of acquittal. Our decision leading to this point is directed by the fundamental legal rubric that we view the evidence in the light most favorable to the State, accepting as true all evidence which tends to prove defendant's guilt and disregarding all contrary evidence. *State v. Harris*, 539 S.W.2d 617 (Mo.App.1976). Our task is thus to ascertain whether there was circumstantial evidence of each element of the offense for which defendant was found guilty—in this case, second degree murder—so that the jury in weighing the evidence could legitimately reach the verdict rendered. A review of the evidence fails to reveal any error by the trial court in overruling defendant's motion for acquittal.

■ Murder in the second degree is established by proving that the killing of a human being was willful, premeditated and with malice aforethought, with malice presumed from the intentional killing with a deadly weapon. *State v. Booth*, 515 S.W.2d 586 (Mo.App.1974). Although the evidence indicates that the victim may have initiated the dispute leading to his demise, the defendant's conduct and later returning to the scene of the initial dispute, displaying a loaded pistol, is sufficient to establish the willfulness and premeditation. Defendant's assertion of self-defense presented a jury question resolved against defendant. Defendant's argument that the killing was in self-defense as a matter of law is refuted by the evidence that defendant returned to the scene of the argument, armed and accompanied by two companions while the victim was unarmed. We conclude that there was sufficient evidence to support the jury verdict of second degree murder.

■ Defendant also suggests that the trial court erred in failing to instruct on excusable homicide. At defendant's request, the jury was instructed on justifiable homicide, but the evidence here does not permit the giving of the inconsistent instruction of excusable homicide.[1] The defendant's contention is that he lawfully fired his gun into the air in self-defense with one of the bullets accidentally striking Dan Rogan in the eye. Thus, defendant's argument rests on the theory that he shot in self-defense. It was therefore unnecessary for the trial court to submit an excusable homicide instruction, for if the jury believed that the defendant shot in self-defense (which they did not so believe) they were required to reach a verdict of acquittal. And if the defendant did not shoot in self-defense, he was engaged in the unlawful conduct of flourishing and discharging a deadly weapon. § 564.610 RSMo. 1969. Defendant's action would thereby not comport with the statutory definition of excusable homicide, as he was acting unlawfully. § 559.050 RSMo. 1969; *State v. Browning*, 442 S.W.2d 55 (Mo.banc 1969); *State v. Merritt*, 540 S.W.2d 183 (Mo.App.1976); *State v. Smith*, 539 S.W.2d 571 (Mo.App.1976); *State v. Simon*, 534 S.W.2d 839 (Mo.App.1976).

■ Furthermore, this State has not recognized the anomalous doctrine of accidental self-defense. *State v. Peal*, 463 S.W.2d 840 (Mo.1971). Such defense is a contradiction in terms. Justifiable homicide implies that the accused acted voluntarily and intentionally for his own protection. Excusable homicide, on the other hand, implies an involuntary, unintentional and non-negligent act. *State v. Merritt*,

---

1. While the defenses of justifiable homicide and excusable homicide are inconsistent, under certain circumstances, not here present, they may be submitted concurrently. *State v. Brown*, 502 S.W.2d 295 (Mo.1973) cert. den., 416 U.S. 973, 94 S.Ct. 1999, 40 L.Ed.2d 562 (1974); *State v. Walker*, 525 S.W.2d 826 (Mo.App.1975). See also MAI–Cr. Comments: Excusable Homicide (1974), for a comprehensive treatment of excusable homicide instruction.

supra. Defendant admits that he voluntarily and intentionally fired his weapon. His only claim of entitlement to the defense of excusable homicide is that the result of his voluntary conduct was involuntary and unintentional. However, in deciding whether to instruct on excusable homicide the trial court does not look to defendant's subjective intent as to the result of his conduct. Intent to cause the result is only relevant in determining the degree of the homicide. The court must look to the conduct itself, and as the accused voluntarily and intentionally initiated the deadly force which resulted in the killing of another he is not entitled to rely on an excusable homicide defense.

█  Finally, defendant contends that the trial court abused its discretion in unnecessarily restricting the scope of cross-examination of a State's witness. Defendant's argument in this regard is specious. While the trial court did sustain objections to the form of certain questions asked by defendant's counsel which were argumentative in nature, there was no limitation placed on defendant's counsel's cross-examination. Counsel was permitted to rephrase each question objected to and sustained and allowed to continue his cross-examination. We find no prejudice to defendant or abuse of the trial court's wide latitude of discretion in regulating the form and scope of cross-examination. *State v. Willett*, 539 S.W.2d 774 (Mo.App.1976); *State v. Cage*, 538 S.W.2d 343 (Mo.App.1976).

The judgment is affirmed.

KELLY, P. J., and SIMEONE, J., concur.

