**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Lafayette THOMAS,
Defendant-Appellant.**

**No. 13103.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 20, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 26, 1984.

Application to Transfer Denied
Feb. 15, 1984.

John D. Ashcroft, Atty. Gen., Dan J. Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Frank V. DiMaggio, Asst. Public Defender, Springfield, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of murder in the second degree, § 565.004,[1] and, per the verdict, was sentenced to imprisonment for a term of 50 years. An appeal to this court ensued.

On January 2, 1982, defendant and his spouse argued before defendant left their Springfield residence en route to a laundromat accompanied by a daughter who was told that "One of these days, your mother's

---

1. Statute and rule references are to V.A.M.S.  and V.A.M.R.

going to die." Upon returning home, the argument continued and defendant directed the three children present to go into another room, telling them "I'm going to miss you all kids." Defendant then told his wife "You're going to be gone too." After defendant took his wife outside the house, the children heard their mother's screams, the sound of two gunshots and defendant repeatedly saying "I'm going to burn you." When the children looked out a window, they saw their mother on the ground engulfed in flames and the defendant standing by before extinguishing the makeshift pyre.

Defendant reentered the house, told the children to leave and call the police. He then moved his car to the front of the house and carried his wife across the street. A neighbor, seeing smoke, went to investigate and found defendant's wife lying in the grass. The neighbor was told by defendant's wife that defendant had poured gasoline on her from a can and that she did not want defendant to get away with it or do it to the children. When defendant told the neighbor it had been an accident, his wife became excited and denied defendant's assertion.

A policeman dispatched to the scene in reference to a fire and shooting observed that defendant's house was on fire and that defendant's wife, badly burned, was lying across the street therefrom. Fearing he might be armed the officer asked defendant if he was possessed of a gun. Defendant answered in the negative, explaining that he had put it in his car. Defendant was then arrested and read his rights.

Upon the wife's arrival at the hospital it was ascertained she had third degree burns over 95 percent of her body and that she was dying. The victim told hospital personnel defendant had poured gasoline on her, then threw a lighted match on her and shot at her twice. The attending physician told a police officer the defendant's wife was dying and if he needed a statement it should be quickly obtained. It was then the doctor advised the wife she was dying. The officer was told by defendant's wife she

was aware she was dying but that she, nevertheless, wanted to talk. Defendant's wife then repeated to the officer what she had previously related to the others involved in the matter. Defendant's wife died on January 3, 1982.

Following defendant's arrest a gun was found in his car. There was evidence defendant had retrieved the weapon from a pawnshop on the day of the fire and shooting. Also collected at the crime scene, inter alia, were burned clothing, a gasoline can with a burned spout, a burned comb and a lock of burned hair found to be human and Negroid. All of these items contained the presence of elements consistent with gasoline. The Chief Fire Marshal who investigated the fire concluded "There was (sic) no obvious accidental ignition sources in the area of origin."

Testifying in his own behalf, defendant asseverated the fire and shooting were accidental. Defendant recounted that while he and his wife were on the back porch arguing, he gave her a shove, that she fell, knocking a jar of gasoline off a shelf onto her and also a lighted gooseneck lantern which started the fire. Defendant testified that after these happenings he put the gun, which had accidentally discharged three times, in the trunk of his car. Further testimony and facts will be recast when necessary for determination of the points relied on.

Defendant's initial pleas to the charge of second degree murder were not guilty and not guilty by reason of mental disease or defect under § 552.030. However, before trial defendant insisted to the court, contrary to counsel's advice, that he desired to withdraw his plea of not guilty by reason of mental disease or defect and to proceed to trial on "a straight plea of not guilty." Following a meticulous examination of defendant under oath by both counsel and the court, the latter permitted the special plea to be withdrawn and the trial was conducted under defendant's unadorned plea of not guilty. Under § 552.030–1 "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental

disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." Nevertheless, subsec. 2 of the statute provides that evidence of mental disease or defect excluding responsibility shall not be admissible at trial unless a not guilty plea specifically based thereon shall be timely made as provided by law. It follows that if such a plea is effectively withdrawn at defendant's insistence, as here, evidence anent mental disease or defect excluding responsibility would not be germane to a simple, unornamented plea of not guilty.

■ In his initial point relied on defendant says the trial court erred in preventing him from asking three examining physicians whether he knew or could appreciate the nature, quality or wrongfulness of his conduct or was capable of conforming his conduct to the law's requirements. Such questions were tantamount to asking the doctors questions concerning a defense which defendant specifically abandoned when he withdrew his special plea under § 552.030–1. We deny the point.

■ Defendant's second point relied on contends the court nisi erred in admitting into evidence State's Exhibit No. 2, a photograph of defendant's wife taken at the hospital after she had received initial treatment. We first note of this point that the exhibit was admitted into evidence at trial without objection; the second observation is that defendant on appeal nowhere entreats us to consider the admission of the exhibit as plain error under Rule 29.12(b). Albeit this court is aware of its inherent power to rule a point for plain error, a determination to do so vel non is predicated upon a finding of manifest injustice or miscarriage of justice resulting in prejudice to the defendant. *State v. Sager,* 600 S.W.2d 541, 578[20] (Mo.App.1980), cert. den. 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Having made no such findings, and in view of defendant's failure to request a review of the point under the plain error rule, we rightfully decline to do so sua

sponte and deny the same. *State v. Rayford,* 611 S.W.2d 377, 378[3] (Mo.App.1981).

■ Via his third point relied on defendant says the trial court erred in allowing a police officer to relate what an attending physician told him at the hospital regarding the terminal nature of the victim's burn injuries because what the doctor told the officer was hearsay. Initially we note that defendant did not properly object to the question or answer thereto nor move for curative action. This being so, no issue was preserved for appellate review. *State v. Eiland,* 534 S.W.2d 814, 817[3] (Mo.App. 1976). We also observe that the physician's statements to the policeman which the latter recounted had already been received into evidence through the doctor's prior testimony on the witness stand. Ergo, the officer's recitations as to the physician's statements to him were exceptions to the hearsay rule and were not objectionable. *State v. Hankins,* 612 S.W.2d 438, 439–440[2] (Mo.App.1981). Moreover, where the declarant, the doctor, is also a witness, the rationale of the hearsay rule does not apply. Hearsay evidence is objectionable because the declarant is not under oath and subject to cross-examination. That, as noted above, was not the case here. Even if the officer's testimony concerning the doctor's statements was hearsay, it was nonprejudicial. *United States v. Bohr,* 581 F.2d 1294, 1304[24] (8th Cir.1978), cert. den. 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351; *State v. Hankins,* supra, 612 S.W.2d at 440[3].

A police officer sent to the scene of the house fire and shooting found the victim in the parkway across from the burning home. He was then informed of what had occurred, either by the victim herself or the neighbor—the record is not clear on this point. He went in search of the defendant and located him in the gathering crowd. The officer asked defendant "if he had a gun on his person," but when the witness was told to tell of defendant's reply, defense counsel objected to the admission into evidence of defendant's response because he had not then been given the *Miranda* warning. When the objection was overruled, the

officer said defendant's reply to the question was "no, he had put the gun in his car." Defendant was then placed under arrest, patted down, handcuffed and advised "of his rights under the Miranda warning." Defendant's fourth point relied on contends the trial court erred in overruling his objection.

■ The policeman had been informed of the shooting and of the burning of the victim by defendant when he went in search of and found defendant amid a crowd of onlookers. The question asked of defendant by the officer was brief and limited in purpose to insure the safety of the policeman and others in the immediate area who might be harmed if the gun was again discharged. Under the circumstances present, we hold a *Miranda* warning was unnecessary. Accordingly, the allowance of defendant's brief response to the single question propounded by the officer before the giving of the *Miranda* warning was not error. Defendant's fourth point is denied. *United States v. Harris,* 611 F.2d 170, 172–173[1, 2] (6th Cir.1979); *United States v. Harris,* 528 F.2d 914, 915[1, 2] (4th Cir.1975), cert. denied 423 U.S. 1075, 96 S.Ct. 860, 47 L.Ed.2d 86 (1976).

The gist of defendant's fifth and sixth points relied on is that the trial court erred in giving Instruction No. 5 (MAI–CR2d 15.-14 Murder: Second Degree, Conventional) and Instruction No. 6 (MAI–CR2d 3.74 Mental Responsibility: Diminished Mental Capacity) with the respective parenthetical insertions "caused serious bodily harm to" his wife in Instruction No. 5 and "with intent to cause serious bodily harm to" his wife in Instruction No. 6 instead of "take the life of" his wife and "with the intent to take the life of" his wife as stated in defendant's tendered but refused instructions.

Per MACH–CR 16.14, the information filed in the cause charged "that the defendant, in violation of Section 565.004 ... committed the class A felony of murder in the second degree ... in that defendant intentionally, premeditatedly, with malice aforethought and unlawfully caused the death of [defendant's wife] by burning her ...."

Instruction 5, per MAI–CR2d 15.14, in part charged that "If you find and believe from the evidence beyond a reasonable doubt: First, that ... the defendant caused the death of [his wife] by burning her, and Second, that the defendant intended to cause serious bodily harm to [his wife] ...."

■ We initially note that the information and given instructions followed the format of informations and instructions approved by the Supreme Court with differing but authorized parenthetical insertions. Albeit the juxtaposition of the words in MACH–CR 16.14 violate the principle of grammer that modifiers be placed next to the words they modify, "intentionally" as used in the information herein, is to be interpreted as modifying the act performed, i.e., "burning her" and not as modifying "caused the death of" as mistakenly insisted by defendant. Therefore, the requirement in paragraph Second in Instruction No. 5 (as well as in Instruction No. 6) of a finding of an intent of harming her is not a variance from the information as defendant contends. *State v. Dixon,* 655 S.W.2d 547, 559[24–31] (Mo.App.1983). The requisite element for conviction under § 565.004 and for instruction considerations, is that the defendant either specifically intended to kill *or* specifically intended to do great bodily harm. *State v. Mannon,* 637 S.W.2d 674, 679[3] (Mo. banc 1982). Under MAI–CR 6.06, nearly identical to MAI–CR2d 15.14, Notes on Use 3 states: "As to paragraph Second, where there is an intent to kill, an intent to do serious bodily harm is always present. Therefore, if there is any question as to whether the defendant intended to kill or whether he intended only serious bodily harm, the better course would be to submit only the intent to do serious bodily harm." Being of a mind that the trial court took the better course we deny defendant's points five and six.

Defendant's seventh and final point relied on is that the trial court erred in failing to give an instruction on excusable homicide (apparently one patterned after MAI–CR2d 2.28) and by submitting a conventional

manslaughter instruction under MAI–CR2d 15.18 without including therein a reference to excusable homicide because defendant's testimony was that his wife accidentally fell knocking a jar of gasoline and a lighted lantern onto herself.

▮ In part, MAI–CR2d 2.28 states: "... 2. You will acquit the defendant on the ground of excusable homicide ... if the death of [*name of victim*] was the result of accident or misfortune [*insert one of the following, omitting the number and brackets*] ... [2] in [*describe lawful act by lawful means that caused the death*] without unlawful intent and without reckless disregard for human life and safety...." Notes on Use under MAI–CR2d 2.28 provide in part "2. This instruction must be given, whether requested or not, if there is evidence to support it. [*State v. Zweifel,* 615 S.W.2d 470, 473[5] (Mo.App.1981) ].... 4. The second alternative set out in the last paragraph of MAI–CR[2d] 2.28 limits the defense to situations where the accident or misfortune occurs during defendant's performance of a 'lawful act by lawful means.'"

Defendant's profuse testimony, which went on at times for many transcript pages without interruption by questions, is admittedly the only evidence upon which to base his present complaint. According to defendant, he and his wife were arguing when she said "Let's go in the office room," which we understand to be an enclosed rear porch where things were stored "that we can keep away from the kids." Upon arrival at the "office," defendant's wife said "something" and defendant replied "Ah, forget it." Defendant's wife "runs behind me, and I shoved her. When I shoved her into the wall, she hit her head ... and a jar ... was setting in there with gas in it.... And when she hit her head, went backwards, dazed ... like she went out ... and when she got up ... I know I heard pop, and she was on fire .... Q. And you all were arguing? A. Yeah. Q. And you say you shoved her? A. Yeah, I pushed her ... she hit her head against this back wall ... she fell back to the floor, and hit her head. And the gas came off [the shelf] over her in the jar ... and she got hooked into [a workbench on which was an open lighted lamp that ignited the gasoline]." We cannot say this testimony demonstrates an occurrence resulting from accident or misfortune during defendant's performance of a lawful act by a lawful means. Rather it shows the wife received her fatal injuries by means of assault and battery when defendant shoved her into the wall and caused her to become drenched in lighted gasoline. *State v. Browning,* 442 S.W.2d 55, 57[4] (Mo. banc 1969); *State v. Simpson,* 471 S.W.2d 173 (Mo.1971); *State v. Grant,* 372 S.W.2d 9, 14 (Mo.1963); *State v. Aitkens,* 352 Mo. 746, 761, 179 S.W.2d 84, 93[20] (1944); *State v. Cook,* 512 S.W.2d 907, 909–910[3, 4] (Mo.App.1974).

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.