STATE of Missouri, Respondent,

v.

James WILLIAMS, Appellant.

No. 46662.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 31, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

The jury found the defendant guilty of capital murder in violation of § 565.001, RSMo 1978, and assessed punishment of life imprisonment with no eligibility for parole for fifty years. Judgment and sentence were entered in accordance with the verdict, and defendant appealed. We affirm.

On August 30, 1981, defendant and Gilbert Dixon went out drinking together. In the early morning hours of August 31, 1981, defendant drove to the home of his cousin, Joyce Williams, where she and her husband Charles were present. Defendant told Charles that he and Dixon had been drinking and that Dixon had about $2000. Defendant asked Charles for directions to the "stroll" area of St. Louis so that he could take Dixon there and set him up to be robbed. Just prior to defendant's leaving the house, Charles looked out the window and saw Dixon sleeping in the car.

Defendant then proceeded with Dixon to the vicinity of Washington and Sarah Streets. Defendant saw Denise Harris walking in this area, got out of the car, and told Ms. Harris that he had a man in the car who wanted a "date." Two of Ms. Harris' friends, Charlie Glover and Keith Parker, approached them; defendant informed the three that Dixon had a large amount of money with him. Defendant proposed that, while Dixon was distracted by Ms. Harris, defendant would take the money and split it with the other three. The four then got into the car and drove to a nearby vacant lot; Dixon slept throughout the sojourn, apparently in an alcoholic stupor. After parking the car, defendant, Harris, Glover, and Parker alit from the vehicle. Defendant told them to remain behind the car until he awakened Dixon. When defendant did so, he led Dixon to believe that Dixon had met Ms. Harris in a bar and that they had traveled to the vacant lot to consummate the "date." Apparently believing defendant, Dixon stated he wanted to proceed. Ms. Harris got into the back seat with Dixon, while the others waited outside the car. Dixon told Ms. Harris that he had no money, which Ms. Harris related to the others. Defendant stated that, if he had to take the money by force, he would have to kill Dixon because Dixon knew him. When Dixon got out of the car, defendant began to search him and ask him about the money. Defendant and Glover began hitting Dixon with bricks and their fists. Glover, Ms. Harris, and Parker soon departed; defendant continued to beat Dixon.

Defendant returned to Joyce and Charles Williams' house covered with blood. He told them that he killed Dixon by beating him with a brick and running over him five times with the car.

At trial, defendant testified that he had accidentally run over Dixon while trying to rescue him from two men who were beating him. He stated that he had backed over Dixon and then stopped when he heard a noise and pulled forward over him again. He testified that he had drunk a large amount of alcoholic beverages and smoked marijuana in the hours preceeding Dixon's death and that he was intoxicated at the time of the killing.

In the first of two points on appeal, defendant argues that the trial court erred in refusing to submit an excusable homicide instruction, patterned after MAI–CR2d 2.28. At trial, the state objected to the submission of this instruction on the ground that defendant was engaged in the unlawful act of driving while intoxicated, and was thereby barred from having the instruction submitted. We rule the point against defendant.

The excusable homicide defense, as set out by MAI–CR2d 2.28, directs the jury to acquit a defendant if it finds that the death of the victim was the result of accident or misfortune. The defense, however, is restricted to situations where the accident or misfortune occurs while the accused acts without wrongful purpose while engaged in a lawful enterprise, and without negligence on his part. Notes on Use, MAI–CR2d 2.28; *State v. Browning*, 442 S.W.2d 55, 57 (Mo. banc 1969); *State v. Simon*, 534 S.W.2d 839, 841 (Mo.App.1976).

Defendant argues, however, that his testimony, if believed, established that he operated the vehicle in an effort to drive off the attackers and rescue Dixon. Relying on cases which involve self defense and defense of others, defendant contends that his efforts to defend the victim were therefore lawful, in spite of his condition of intoxication while operating the vehicle. This argument overlooks the additional element of the defense of accident as articulated in the refused instruction and in the common law relating to excusable homicide: that the activity which results in the death not be undertaken in "reckless disregard for human life and safety." By his own description of his activities, he was intoxicated, yet operated a powerful car in reverse at high speed in close proximity to the person he killed. Such conduct was hardly the "usual and ordinary caution" required of one who would avail himself of the defense of excusable homicide set out in § 559.050, RSMo 1969. Although that statute has been repealed, it articulated the common law of this State which continues in existence. Notes on Use, MAI–CR2d 2.28. See also *Simon*, supra, at 841. Defendant's own testimony demonstrated that an instruction on excusable homicide was not warranted, and the trial court properly refused it.

Defendant's second claim of error asserts that the trial court erred in refusing a proffered instruction on first degree murder as a lesser included offense of capital murder. Defendant argues that, since an attempted robbery was proven by the evidence, murder in the first degree, with the underlying felony of attempted robbery, was a lesser included offense of capital murder.

An offense can be a lesser included offense of another either when its elements are necessarily included therein or when a statute so specifically denominates it. As to the former test, first degree murder in Missouri requires proof of commission of or an attempt to commit a felony; capital murder does not. § 565.003, RSMo 1978. Nor does any statute specifically denominate first degree murder a lesser degree of capital murder. First degree murder is not a lesser included offense of capital murder. *State v. Baker*, 636 S.W.2d 902, 904 (Mo. banc 1982). No first degree murder instruction is required in a trial for capital murder committed after January 1, 1979. *State v. Betts*, 646 S.W.2d 94, 96 (Mo. banc 1983).

Moreover, it would have been error for the trial court to instruct on murder in the first degree where, as here, defendant was only indicted for capital murder. Due process requirements dictate that a court not instruct on an offense "not specifically charged in the information or indictment unless it is a lesser included [or lesser degree] offense." *State v. Blair*, 638 S.W.2d 739, 747 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). The point is denied.

The judgment is affirmed.

GAERTNER, P.J., and SMITH, J., concur.