**STATE of Missouri, Respondent,**

v.

**David BOHLEN, Appellant.**

No. 48391.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 26, 1985.

Application to Transfer Denied
May 29, 1985.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Charles Clifford Schwartz, Clayton, for appellant.

SIMON, Presiding Judge.

Defendant was indicted for the capital murder of Gerald Walker by shooting him on May 20, 1983, in the City of St. Louis, and was subsequently found guilty on January 5, 1984, by a jury of murder in the second degree in violation of § 565.004 RSMo.1978 (Repealed L.1983, S.B. 276, § 1, effective 10–1–84, now § 565.021 RSMo. Supp.1984). The jury assessed punishment at thirty years and the trial court accordingly imposed sentence. We affirm.

Defendant raises three points on appeal. He attacks the sufficiency of the evidence for a conviction of murder in the second degree, the denial of his motion for mistrial at the inception of the trial, and the propriety of a comment during closing argument by the prosecutor.

On May 20, 1983, at approximately five in the evening, victim, his girlfriend and a man known as Slob were sitting on a wall near Bacon Street in the City of St. Louis. Victim's girlfriend noticed a blue Buick, in which defendant was a passenger, drive slowly past them on Bacon Street. Moments later, she saw defendant, clad in a white tee-shirt and jeans, running towards them with a silver .38 pistol in his hand. She and the victim began to run. As defendant neared, she saw defendant shoot victim, who was in front of her, in the back of the head. She continued to run and heard someone shout, "Wait, bitch" but she kept running, across a vacant lot and into an alley. She heard two more shots from where she hid behind a garbage can in the alley. She then jumped the alley fence and fled to safety.

Martha Webb testified that before the shooting occurred, defendant and another man knocked on her door at her home on Garfield Street. Defendant asked her to watch his car, a red Mustang, until he returned, to which she agreed. She watched defendant cross the street and an alley and disappear past some bushes heading toward Bacon Street. She heard three gunshots and then, about eight minutes later, saw defendant come back through the bushes. In the alley she saw him pocket a "nickel-plated pistol" and shuffle something in his hands as if counting money. Meanwhile, the other man who had been with defendant when they first knocked on her door had returned to her house and driven off in the red Mustang. She stated defendant was wearing a pale green hospital shirt and the other man, a white tee-shirt and jeans. She went over to Bacon Street to see what was going on and saw people around a man lying on the ground, later identified as the victim. He was killed by the bullet wound to the back of his head.

Defendant's first point states the evidence was insufficient to support the verdict of murder in the second degree, but he

focuses his argument on the theory that, while the evidence in the case clearly reflects an intent to kill, consistent with capital murder, the evidence is insufficient to support the jury's finding of second degree murder based on the second degree murder instruction as given.

The gist of defendant's point, although he states he is not asserting instructional error, is the use of "intended to cause serious bodily harm to" instead of "intended to take the life of." Paragraph second of MAI-CR 2d 15.14 provides: "Second, that the defendant intended to (take the life of) (cause serious bodily harm to) [name of victim] ..." The second degree murder instruction as given, based on MAI-CR 2d 15.14, required that the jury find defendant caused victim's death by shooting him while intending to cause serious bodily harm not done in anger suddenly provoked by unexpected acts or conduct of the victim. He contends the evidence that victim was shot in the back of the head reflects only an intent to kill and not an intent to cause serious bodily harm. Therefore, he was guilty of either capital murder or nothing and he professes innocence. We reject defendant's argument.

▮▮▮ Despite defendant's "all-or-nothing" argument because the evidence in his view supports an instruction for capital murder, but not the second degree murder instruction as given, he acknowledges that the pattern instructions mandate submission of second degree murder as a lesser included offense of capital murder. MAI-CR 2d 15.00. The requisite element for conviction under § 565.004 RSMo.1978, and for instruction considerations, is that the defendant either specifically intended to kill *or* specifically intended to do great bodily harm. *State v. Mannon,* 637 S.W.2d 674, 679[3] (Mo. banc 1982); *State v. Thomas,* 664 S.W.2d 56, 60[8] (Mo.App. 1984). We are persuaded by *State v. Thomas* where an argument similar to defendant's was rejected. The court held:

> Under MAI-CR 6.06 [Murder: Second Degree instruction, effective 3-13-75], nearly identical to MAI-CR 2d 15.14,

Notes on Use 3 states: "As to paragraph Second, where there is an intent to kill, an intent to do serious bodily harm is always present. Therefore, if there is any question as to whether the defendant intended to kill or whether he intended only serious bodily harm, the better course would be to submit only the intent to do serious bodily harm." 664 S.W.2d at 60.

Here, the evidence showed that defendant shot victim apparently at close range while victim was fleeing. While defendant argues this supports only an intent to kill, a finding of either the intent to kill or the intent to do serious bodily harm is supported by this evidence and satisfies the intent element of second degree murder. Defendant has failed to show how he was prejudiced by the use of "intended to do serious bodily harm," instead of "intended to kill," and we find no prejudice from the record before us. Point denied.

Defendant also charges prejudicial error in the trial court's failure to declare a mistrial or to question the jury panel concerning the placement of a bomb in the courtyard of the criminal courts building. After the prospective jurors had been selected, but not sworn on January 3, 1984, they were sent home for the night. That same evening the discovery of the bomb in the courtyard of the criminal courts building received media coverage. The next day, upon the prospective jurors' return to the courthouse but before they were sworn, defendant requested a mistrial. The court denied the motion for mistrial after first excusing an alternate juror who informed the court in chambers that she had overheard a conversation on the courthouse steps on January 3, 1984, pertaining to planting a bomb in the court building. She denied any discussion with other prospective jurors about the conversation. Neither the trial court, prosecutor, nor defendant sought to further voir dire the remaining prospective jurors to determine whether any of them should have been excused for cause. Although all the parties agreed defendant had nothing to do with the bomb,

defendant argues the state had an affirmative duty to show the absence of any improper influence on the prospective jurors, citing *State v. Edmondson*, 461 S.W.2d 713, 723 (Mo.1971). He argues that because the jurors had not been sequestered, they might have known about the bomb and associated defendant with the bombing attempt, causing them to be fearful and prejudiced against defendant.

■ The trial court did not have to sequester the prospective jurors under the mandate of § 546.230 RSMo.1978. The jury does not exist until the veniremen selected therefor are sworn to service in that capacity. *State v. Shaw*, 636 S.W.2d 667, 671 (Mo. banc 1982). The admonishment provision of § 546.230 applies only to the jury and not the venire panel. *State v. Underwood*, 530 S.W.2d 261, 264–65 (Mo. App.1975). The trial court did not err by not separating the veniremen for the night. Section 546.230 proscribes only the separation of the *jury*, which at that point did not yet exist. 636 S.W.2d at 671[3]. In interpreting § 546.230, the court in *State v. Edmondson*, 461 S.W.2d at 723, quoted *State v. Dodson*, 38 Mo. 846, 92 S.W.2d 614, 615[1] (1936), and required that "if the separation or misconduct of the *jury* took place during the progress of the trial, the verdict will be set aside, unless the state affirmatively shows that the *jurors* were not subject to improper influences." (Emphasis added.) While the state has an affirmative duty to show the absence of influence on jurors, no affirmative duty is foisted upon the state to show the absence of influence from the bomb scare or its media coverage upon *prospective jurors*. *Accord State v. Underwood*, 530 S.W.2d at 265. Point denied.

■ Defendant's final point complains of the impropriety of a comment made by the prosecutor during his closing argument. We excerpt the trial court proceedings:

[Prosecutor]: Mr. Schwartz will have an opportunity to talk with you now and I will have an opportunity, as the Judge indicated, to respond to him because I *have the duty of going forward with the evidence and proving the case to you. It's a duty I'm happy to come into this courtroom—*

[MR. SCHWARTZ]: Objection. There's not a question of being happy.

[THE COURT]: Objection is sustained.

[MR. SCHWARTZ]: May we approach the bench?

(The following proceedings took place at the bench, out of the hearing of the jury.)

[MR. SCHWARTZ]: I think that improper comment by counsel to try to let these people believe that he's happy to do anything today is really just improper. He's a paid prosecutor and that's his job and to come in and say he's happy about it, I think, is really wrong. It's like he knows something more than what—

[THE COURT]: Not so loud. Not so loud.

[MR. SCHWARTZ]: For that reason, I'd ask for a mistrial. That's patently wrong and error in any case.

[THE COURT]: *Well, do you really want a mistrial?*

[MR. SCHWARTZ]: *I don't really want one—*

[THE COURT]: Your request is denied. Let is proceed. (Emphasis added.)

Defendant contends the remark that the prosecutor was "happy" to do his duty, made at a critical time of trial, was so inflammatory that the declaration of a mistrial and the discharge of the jury were warranted. We have considered the statement itself, the context in which it was made, the objection made, and the ruling thereon. The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which prejudice to the defendant can be removed no other way. *State v. Davis*, 653 S.W.2d 167, 176[19] (Mo. banc 1983). Whether a mistrial should be declared rests largely within the discretion of the trial court because the trial court observes the incident that precipitates the request for a mistrial and is in a better position than we

to determine the prejudicial effect, if any, the incident has on the jury. *Id.* [20]. The trial court's decision whether to grant a mistrial will not be disturbed in the absence of an abuse of discretion. *Id.* [21]. Improper argument will justify reversal only if its effect is decisive on the jury's determination and the defendant has the burden of demonstrating such effect. *State v. Ballard,* 657 S.W.2d 302, 307[5] (Mo.App. 1983). The record does not indicate that the comment had a decisive effect on the jury. The objection was sustained and no other remedial measure less drastic than mistrial was requested. Point denied.

Judgment affirmed.

STEPHAN, J., and FRED E. SCHOEN-LAUB, Special Judge, concur.